NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT J. IANUALE and PHILIP J. IANUALE,<br><br>                              Plaintiffs,<br><br>        v.<br><br>STATE OF NEW JERSEY *et al.*,<br><br>                              Defendants. | Civil Action No. 18-03069 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon three separate motions.  Defendants State of New Jersey, Monmouth County Prosecutor's Office (MCPO), Monmouth County Prosecutor Christopher Gramiccioni, Assistant Prosecutor Margaret Koping, and Detective John Sosdian[1] move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(1) and Rule 12(b)(6), and also move for partial summary judgment pursuant to Rule 56.  (ECF No. 77.[2])  Defendant County of Monmouth moves to dismiss pursuant to Rule 12(b)(6).  (ECF No.

---

[1]    The Court refers to the MCPO, Gramiccioni, Koping, and Sosdian collectively as the "MCPO Defendants" and to Gramiccioni, Koping, and Sosdian as the "Individual MCPO Defendants."

[2]    After moving to dismiss under Rule 12(b)(1) and Rule 12(b)(6), (ECF No. 65), the State and the MCPO Defendants were granted leave to terminate their Motion to Dismiss to convert one aspect of it into a Motion for Summary Judgment under Rule 12(d), (ECF Nos. 72 & 75).  Accordingly, Plaintiffs' opposition at ECF No. 70 responds to Defendants' now-terminated Motion to Dismiss, while Plaintiffs' opposition at ECF No. 79 responds to the MCPO Defendants' re-filed Motion to Dismiss/Motion for Summary Judgment.  In their second opposition (ECF No. 79), Plaintiffs incorporated their arguments from their first opposition (ECF No. 70) by reference. (ECF No. 79 at 1.)

63.)  Defendants Hazlet Township and Hazlet Township Police Department (Hazlet Defendants) move to dismiss pursuant to Rule 12(b)(6) and, in the alternative, for judgment on the pleadings pursuant to Rule 12(c).  (ECF No. 64.)  Plaintiffs Robert J. Ianuale and Philip J. Ianuale, proceeding *pro se*, opposed all three motions, and all Defendants replied.  (ECF Nos. 70, 71, 76, 79-80.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendants' Motions are **GRANTED.**

I.    **BACKGROUND**

A.    **Procedural Background**

Plaintiffs filed their initial Complaint on March 2, 2018.  (ECF No. 1.)  The Court thereafter stayed the matter pending the outcome of Plaintiffs' related criminal proceedings.  (ECF No. 30.)  On April 19, 2023, the Court directed Plaintiffs to advise whether they intended to proceed with this action.  (ECF No. 31.)  Plaintiffs informed the Court that they intended to prosecute the case.  (ECF No. 33.)  Shortly thereafter, Defendants confirmed that the criminal cases against Plaintiffs had concluded.  (ECF No. 36.)

On June 6, 2023, Plaintiffs moved to "amend" their Complaint.  (ECF No. 46.)  After the Court sought clarification, it became clear that Plaintiffs were seeking to "supplement" their Complaint with post-Complaint factual allegations, as permitted under Rule 15(d).  (ECF No. 58 at 3.[3])  On November 28, 2023, the Court directed Plaintiffs to file their proposed supplemental pleading, (ECF No. 51), which the Plaintiffs filed on November 29, 2023 (ECF No. 53).  On December 29, 2023, the Court granted Plaintiffs' Motion to Amend (ECF No. 46) and ordered that

---

[3]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Plaintiffs' initial Complaint (ECF No. 1) and Supplemental Pleading (ECF No. 53) would together constitute the operative pleading.[4]  (ECF No. 58.)

Plaintiffs pled twenty-six counts in their initial Complaint: wrongful arrest under 42 U.S.C. § 1983[5] (Counts One and Two); malicious prosecution under § 1983 (Counts Three, Four, and Fifteen); unlawful seizure under § 1983 (Counts Five and Six); false arrest/imprisonment under § 1983 (Count Seven); unlawful policy, custom, practice, and inadequate training under § 1983 (Count Eight); supervisor liability for failure to train under § 1983 (Count Nine); violations of the New Jersey Civil Rights Act (NJCRA) (Counts Ten and Eleven); intentional infliction of emotional distress (Count Twelve); defamation under § 1983 (Counts Thirteen and Fourteen); civil conspiracy under § 1983 (Count Sixteen); negligence under § 1983 (Count Seventeen); abuse of process under § 1983 (Counts Eighteen and Nineteen); violation of due process under § 1983 (Counts Twenty and Twenty-One); excessive bail under § 1983  (Count Twenty-Two); speedy trial violation under § 1983 (Count Twenty-Three); violation of the First Amendment under § 1983 (Count Twenty-Four); violation of the Fourteenth Amendment Equal Protection Clause under § 1983 (Count Twenty-Five); and violation of and preemption under the Communications Decency Act, 47 U.S.C. § 230, under § 1983 (Count Twenty-Six).  (*See* ECF No. 1.)  In their Supplemental Pleading, Plaintiffs added additional factual allegations surrounding their causes of action for civil conspiracy, malicious prosecution, abuse of process, excessive bail, unlawful seizure, and violation of speedy trial rights.  (*See* ECF No. 59.)  Finally, Plaintiffs bring claims for injunctive relief for the return of property allegedly seized from them.  (*See* ECF No. 1.)

---

[4]	Unless otherwise noted, the Court refers to the initial Complaint and the Supplemental Pleading as the "Complaint."

[5]	The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Defendants move to dismiss all of Plaintiffs' claims. The MCPO Defendants also move for partial summary judgment with respect to Plaintiffs' claim for injunctive relief for the return of certain property. (*See* ECF No. 77-2 at 13.)

**B.    Factual Background[6]**

Plaintiffs' allegations stem from their arrest in March 2016. (ECF No. 1 ¶¶ 5-6.) Plaintiff Robert Ianuale was the CEO of Resorb Networks Inc. (Resorb), a New York corporation that in 2015 launched a live online broadcasting service called SwerveCast. (*Id.* ¶ 16.) Robert, through various social media apps, personally engaged with viewers as a "humorous (albeit abrasive to some) 'shock-jock' online personality called 'Fist Pump.'" (*Id.*) Plaintiff Philip Ianuale is Robert's brother, who resided with Robert in the home owned by their parents. (*Id.* ¶ 19.)

**1.    *Robert's Cyber-Stalker***

More than a year before being arrested, Robert was the victim of an aggressive criminal cyber-stalker. (*Id.* ¶ 25.) The cyber-stalker told Robert in 2015 "that he would get [Robert] . . . arrested" by fabricating allegations related to child endangerment and pornography, which Robert was ultimately charged with in 2016. (*Id.* ¶ 26.) Robert was also the victim of five separate "swatting" incidents during 2015. (*Id.* ¶ 20.) "Swatting" is when someone calls law enforcement with a false report of criminal activity, prompting an emergency law enforcement response. (*Id.*) Pursuant to an Open Public Records Act request, Plaintiffs learned that an individual named "Shane Johnson" was involved in making at least one of these false reports against Robert. (*Id.* ¶ 21.)

---

[6]    The facts are drawn from Plaintiffs' Complaint (ECF Nos. 1 & 59). The Court accepts all factual allegations in the Complaint as true for purposes of the pending Motions to Dismiss, except for those facts as specified herein that pertain to the MCPO Defendants' Motion for Summary Judgment. *See Philips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

In March 2015, Robert also became the victim of identity theft when someone gained access to Robert's computers, passwords, and devices and ordered smartphones and submitted credit card applications under Robert's name.  (*Id.* ¶¶ 23-24.)  Fans of Robert's broadcasts identified Robert's stalker as Tim S. Johnson, "who had claimed that his brother was a New Jersey law enforcement officer."  (*Id.* ¶ 27.)  According to Plaintiffs, the cyber-stalker utilized several different aliases, including "Shane Johnson," "YouNowWatcher," and "Watcher." (*Id.* ¶¶ 21-22, 28.)

On numerous occasions prior to Plaintiffs' arrests, Robert had communicated with Defendant Detective Sosdian about Robert's cyber-stalker and provided "proof that Plaintiff Robert Ianuale was the target of false, fabricated and misleading information."  (*Id.* ¶¶ 30-32). Detective Sosdian, however, never investigated the cyber-stalking or swatting incidents. (*Id.* ¶ 31.) Instead, Detective Sosdian claimed that Shane Johnson contacted him in October 2015 and provided him with "incriminating information" against Robert.  (*Id.* ¶¶ 34-36.)  Plaintiffs allege that Detective Sosdian has a nephew named Shane Johnson.  (*Id.* ¶ 29.)

### 2.    *Plaintiffs' Arrests*

Plaintiffs assert that, "based on information supplied by Shane Johnson," Detective Sosdian "initiated false affidavits to justify the arrest and search warrants for Plaintiff Robert Ianuale," with the first search occurring on March 23, 2016.  (*Id.* ¶¶ 37-40).  On March 28, 2016, "Sosdian and John Does 1-10 planned a ruse to enter the home of [Plaintiffs]… instead of properly executing a search warrant."  (*Id.* ¶ 41.)  Law enforcement seized the home's video surveillance system and then arrested Robert "based solely off of false and misleading affidavits written by Defendant John Sosdian."  (*Id.* ¶¶ 46-51.)  Additionally, Plaintiffs allege that Robert's car and other unspecified property was unlawfully seized.  (*Id.* ¶¶ 57, 151.)  While arresting Plaintiffs, Detective Sosdian

said the following to Robert: "Remember me? I'm Detective Sosdian. You e-mailed me a few times about Watcher." (*Id.* ¶ 50.)

Robert was charged with first-degree endangering the welfare of a minor, first-degree promoting prostitution of a minor, first-degree use of a juvenile to commit a crime, second-degree distribution of child pornography, third-degree endangering the welfare of a child, third-degree luring an adult, and third-degree financial facilitation of a crime. (*Id.* ¶ 51.) Philip, who was home during Robert's arrest, was also arrested and charged with obstruction of justice and resisting arrest. (*Id.* ¶¶ 42-43.)

### 3.    *Robert's Allegations of the MCPO's Misconduct*

On March 28, 2016, Detective Sosdian had Resorb's servers deactivated without a federal warrant. (*Id.* ¶ 61.) Detective Sosdian also contacted Twitter to have Robert's Twitter account deactivated. (*Id.* ¶ 62.) On April 17, 2017, Detective Sosdian contacted Facebook to have Robert's account suspended, claiming that Robert was a convicted sex offender even though he had not been convicted of a crime. (*Id.* ¶ 89.)

While Plaintiffs' charges were pending, the MCPO and Defendant Monmouth County Prosecutor Gramiccioni issued a press release about the arrests. (*Id.* ¶ 63; Ex. B.) The release bore the headline, "'Fistpump' Charged with Prostitution of Underage Girls" and stated that Robert, "the owner/operator of the online live broadcasting service known as SwerveCast, was arrested" for "the prostitution of juvenile females and on at least one occasion tried to lure online viewers to sexually assault a woman and broadcast the assault live over the internet." (ECF No. 1-1 at 5.) After detailing the charges against Plaintiffs, the press release included a reminder that "[d]espite these charges, every defendant is presumed innocent unless and until found guilty beyond a reasonable doubt following a trial at which the defendant has all of the trial rights guaranteed by the U.S. Constitution and State law." (*Id.* at 6.)

6

In Monmouth County Superior Court, Robert's bail was set at $450,000. (ECF No. 1 ¶ 69.) Plaintiffs allege that Defendant Assistant Prosecutor Koping "changed the location of the hearing so that Plaintiff Robert Ianuale would be deprived of counsel when bail was initially set." (*Id.* ¶ 66.) Robert's bail was posted on May 27, 2016. (*Id.* ¶ 69.) As a condition of his release, Robert was prohibited from contacting any witnesses. (*Id.* ¶ 70.) Two weeks after Robert was released on bail, Assistant Prosecutor Koping provided Robert a list of witnesses, which included Shane Johnson. (*Id.* ¶ 72.) Robert, through his attorney, then sought more information about Shane Johnson to ensure Robert's safety and to ensure Robert could comply with the conditions of his release. (*Id.*) But Assistant Prosecutor Koping refused to provide any information on Shane Johnson. (*Id.* ¶ 73.)

Prior to Plaintiffs' indictment, Detective Sosdian also contacted Robert's ex-girlfriend and ex-girlfriend's father multiple times to try to obtain statements about Robert. (*Id.* ¶ 76.) On August 29, 2016, Detective Sosdian and other individuals acting under the MCPO's direction arrived at Plaintiffs' residence, without a warrant, and told Robert to "be a man and come outside." (*Id.* ¶ 77.) Plaintiffs aver this was done in an attempt to "alarm, harass and cause anxiety" to them. (*Id.*) On October 6, 2016, Detective Sosdian prepared a false affidavit to obtain search warrants for Plaintiffs' cell phones. (*Id.* ¶ 78.)

On January 17, 2017, Robert filed a motion to modify his bail conditions to enable him to use the internet, and again sought more information about Shane Johnson. (*Id.* ¶ 79.) The court granted Robert limited access to the internet but prohibited him from using live-streaming services or forums on which he could express his views to the public. (*Id.* ¶ 80.) The court also denied Robert's request for more information about Shane Johnson. (*Id.* ¶ 81.) On March 2, 2017, Shane Johnson advised Detective Sosdian that Robert was using Facebook and Instagram. (*Id.* ¶ 82.)

Four days later, Detective Sosdian signed an affidavit about Robert's internet use and stated that he received this information from Shane Johnson. (*Id.* ¶ 83.) Upon learning of Robert's use of Facebook and Instagram, Assistant Prosecutor Koping moved to increase Robert's bail amount from $450,000 to $750,000. (*Id.* ¶ 84.) The court, however, ruled that Robert had not violated his bail conditions. (*Id.* ¶ 87.)

On March 30, 2017, Detective Joseph Spicuzza Jr. conducted a forensic examination of all electronic devices, phones and hard drives that were seized at Plaintiffs' home. (*Id.* ¶ 85.) Spicuzza's report concluded that "no suspected child pornography images or videos were found." (*Id.*) On April 3, 2017, Detective Sosdian signed an affidavit in which he swore that another detective had left a receipt for Robert's seized vehicle at Plaintiffs' parent's home, but no receipt had actually been left. (*Id.* ¶ 86.)

### 4.    *Philip's Allegations of the MCPO's Misconduct*

Philip, who was arrested for obstruction of justice and resisting arrest, (*id.* ¶ 43), avers that video surveillance of his parents' home during his arrest, which was seized by the MCPO without a warrant, (*id.* ¶ 46), would have exonerated him and incriminated Defendants, (*id.* ¶¶ 48, 231). Philip maintains that Assistant Prosecutor Koping failed to produce the video surveillance, despite multiple representations to the court and to Philip that she would do so. (*Id.* ¶¶ 95, 98, 100, 103.) Instead, Assistant Prosecutor Koping stated that technical difficulties prevented the MCPO from downloading the video surveillance files. (*Id.* ¶ 99.) When Assistant Prosecutor Koping eventually provided the video files to Plaintiffs, as ordered by the court, she only provided five of the eight angles, "purposely withholding three (3) camera angles that would have been most detrimental to the State's case." (ECF No. 59 ¶¶ 6, 41.) Assistant Prosecutor Koping also represented to the court that she had not viewed the videos, even though six years had passed. (*Id.* ¶ 41.)

### 5. *Plaintiffs' Indictments and Robert's Guilty Plea*

Plaintiffs were indicted on July 28, 2017. (ECF No. 1 ¶ 93.) Only minutes after Plaintiffs received a copy of their indictment, Shane Johnson posted the indictment on his Twitter account, which Plaintiffs say suggests that Detective Sosdian had been conspiring with Shane Johnson. (*Id.* ¶ 94.) Following the indictment, the MCPO and Prosecutor Gramiccioni issued another press release, this one with the headline: "'Fistpump' Indicted for Prostitution of Underage Girls." (ECF No. 1 ¶ 96[7]; ECF No. 1-1 at 18.) As with the press release about their arrest, the announcement of the indictment made clear that Plaintiffs were presumed innocent of the charges against them. (ECF No. 1-1 at 19.)

Plaintiffs allege that the MCPO Defendants "conspired to suppress discovery by hiding the true identity and all pertinent information regarding Timothy Shane Johnson," whom Plaintiffs allege was the State's sole witness. (ECF No. 59 ¶¶ 8-9.) On October 18, 2019, the court granted Plaintiffs' motion to compel information about Shane Johnson. (*Id.* ¶¶ 14-15.) Moreover, the court ordered Defendants to return Plaintiffs' property, including Robert's vehicle. (*Id.* ¶¶ 16-17.) Plaintiffs also brought motions to dismiss for speedy trial violations, which the court denied. (*Id.* ¶¶ 25.)

Robert's $450,000 cash bail eventually expired, but Prosecutor Gramiccioni and Assistant Prosecutor Koping refused to notify him of that fact, refused to return the cash bail to him, and improperly used his bail as a "bargaining chip" in plea negotiations. (*Id.* ¶ 63.)

On June 23, 2022, Robert pleaded guilty to luring/enticing an adult (N.J. Stat. Ann. § 2C:13-7A) and money laundering (N.J. Stat. Ann. § 2C:21-25A) and was sentenced to three years

---

[7]    Elsewhere in their Complaint, Plaintiffs allege that Assistant Prosecutor Koping was also involved in issuing this press release. (ECF No. 1 ¶ 219.)

in New Jersey State Prison. (*Id.* ¶¶ 30.) The remaining charges were dismissed with prejudice. (*Id.* ¶ 31.) Robert claims that, even though his case was one of the oldest on the Monmouth County Superior Court's criminal docket, the prosecution had not provided him with full and complete discovery at the time of his guilty plea. (*Id.* ¶¶ 5, 93.) Robert avers that he "reluctantly" accepted a guilty plea "in order to finally put the criminal case to an end or risk being railroaded and forced into a trial without full and complete discovery, without complete witness information, and without being provided with any evidence by Defendants that a crime was even committed." (*Id.* ¶ 28.)

All pending charges against Philip were dismissed on March 31, 2023. (*Id.* ¶ 31.)

### 6.    *Robert's Seized Vehicle*

The MCPO Defendants move for partial summary judgment with respect to Robert's claim for injunctive relief for the return of his vehicle. (ECF No. 77-2 at 13.) In support, the MCPO Defendants submit an April 1, 2024 letter from WSFS Bank to the MCPO, in which WSFS Bank confirms that the lien/loan on Robert's vehicle had been paid in full as of February 23, 2017. (ECF No. 77-1 ¶ 2; ECF No. 77-4 at 5.) On April 2, 2024, the MCPO Defendants sent a letter to Robert advising him that his vehicle had been "authorized for release." (ECF No. 77-1 ¶ 3; ECF No. 77-4 at 2.) Robert does not dispute receiving the release letter from the MCPO, but he claims that Defendants have not returned other property of his including "several cellphones, laptops, desktop computers, business documents, contracts, invoices, digital media, USB drives, disk drives, and hundreds of miscellaneous printed documents." (*See* ECF No. 79 at 2-3.)

## II.    <u>STANDARD OF REVIEW</u>

### A.    **Rule 12(b)(1)**

Rule 12(b)(1) permits a defendant to move at any time to dismiss the complaint for lack of subject-matter jurisdiction on either facial or factual grounds. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge asserts that "the complaint, on its

face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Gould Electronics Inc.*, 220 F.3d at 176. "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Solar*, Civ. No. 18-1340, 2021 WL 1196405, at *2 (D.N.J. Mar. 30, 2021).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

### B.    Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of Scranton*, 975 F.3d 406, 412 (3d

Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### C.    Rule 12(c)

Under Federal Rule of Civil Procedure 12(c), a motion for judgment on the pleadings may be filed after the pleadings are closed.  Fed. R. Civ. P. 12(c).  In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Rule 12(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

### D.    Rule 56

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

12

it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

## III.    DISCUSSION

### A.    The State's Eleventh Amendment Sovereign Immunity

The State argues that it is immune from all claims under its Eleventh Amendment sovereign immunity. (ECF No. 77-2 at 14-15.) It is well established that under the principle of sovereign immunity, "[s]tate governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment."[8] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 253 (3d Cir. 2010). As a result, state sovereign immunity under the Eleventh Amendment "is a jurisdictional

---

[8]    Relying on the three-factor test outlined by the United States Court of Appeals for the Third Circuit in *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655 (3d Cir. 1989), Plaintiffs argue that the MCPO Defendants are not entitled to Eleventh Amendment sovereign immunity. (*See* ECF No. 70 at 37.) But only the State raised the Eleventh Amendment as a bar to suit. (*See generally* ECF No. 77.) Nevertheless, "sovereign immunity advances a jurisdictional bar which a party may raise at any time, even on appeal, and which the court may raise *sua sponte*." *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000). The Court is also mindful of its "continuing obligation to assess its subject matter jurisdiction" and to "dismiss a suit *sua sponte* for lack of subject matter jurisdiction at any stage in the proceeding." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). There is not presently a sufficient basis upon which to dismiss the claims against the MCPO Defendants *sua sponte* based on sovereign immunity. *See Murphy v. Middlesex Cnty.*, Civ. No. 15-7102, 2017 WL 6342154, at *6 (D.N.J. Dec. 12, 2017) (finding that a county prosecutor's office was not entitled to Eleventh Amendment immunity where there was no representation that the State of New Jersey would defend against the suit and indemnify the prosecutor's office for any judgment).

bar which deprives federal courts of subject matter jurisdiction." *Wright v. New Jersey/Dep't of Educ.*, 115 F. Supp. 3d 490, 494 (D.N.J. 2015). The jurisdictional bar applies unless Congress has abrogated a state's sovereign immunity or a state has consented to suit. *See Lombardo v. Pa. Dep't of Public Welfare*, 540 F.3d 190, 195-96 (3d Cir. 2008).

Here, the State has not consented to be sued in federal court on Plaintiffs' civil rights or tort claims. *See Mierzwa v. United States*, 282 F. App'x 973, 976 (3d Cir. 2008) ("The State of New Jersey has not waived its sovereign immunity with respect to § 1983 claims in federal court."); *Ritchie v. Cahall*, 386 F. Supp. 1207, 1209-10 (D.N.J. 1974) (finding there was "no waiver of sovereign immunity by the State of New Jersey such that it can be sued in federal court" under the New Jersey Tort Claims Act). Nor has Congress abrogated the states' immunity through the enactment of 42 U.S.C. § 1983. *Mikhaeil v. Santos*, 646 F. App'x 158, 162 (3d Cir. 2016).

Nevertheless, Plaintiffs contend that sovereign immunity does not apply to their claims for injunctive relief. (ECF No. 70 at 31 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).) While *Ex Parte Young* carved out an exception to sovereign immunity for suits seeking injunctive relief against state officials, the exception does not apply to suits against the state and their agencies. *See Soc'y House, LLC v. NJ*, Civ. No. 21-13123, 2023 WL 2535282, at *4 (D.N.J. Mar. 15, 2023) ("[T]he exception in *Ex Parte Young* does not apply if 'the suit is in fact against the state.'"). Plaintiffs' arguments are therefore unavailing as to the State. *See Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 602 (D.N.J. 2010) ("Plaintiffs may bring suits for prospective injunctive relief pursuant to federal law against state officers in their official capacities, but not the state itself . . . ."). Thus, all claims against the State are dismissed without prejudice under Rule 12(b)(1) because the Eleventh Amendment bars assertions of such claims in federal court.

B.     **Section 1983 and NJCRA Claims Against the State**

Plaintiffs bring claims against the State under 42 U.S.C. § 1983 and the NJCRA. The State asserts that Plaintiffs' claims must be dismissed because they are not "persons" amenable to suit under either civil rights statute. The Court agrees.

As courts in this district have recognized, § 1983 provides its own bar to bringing actions against states and state actors, *i.e.*, "who or what is a suable 'person' under [§] 1983." *See Kaul*, 372 F. Supp. 3d. 206, 243 (D.N.J. 2019) (recognizing that the suable person analysis is a separate analysis from Eleventh Amendment sovereign immunity).

42 U.S.C. § 1983 states in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To obtain relief under § 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "The same is true under [the NJCRA], which mirrors the language of § 1983." *Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012) ("New Jersey courts 'have consistently looked to federal § 1983 jurisprudence for guidance' and have 'repeatedly interpreted NJCRA analogously to § 1983." (citing *Gonzalez v. Auto Mall 46, Inc.*, 2012 WL 2505733, at *4 (N.J. Super. Ct. App. Div. July 2,

2012))); *see also Lopez-Siguenza v. Roddy*, Civ. No. 13-2005, 2014 WL 1298300, at *7 (D.N.J. Mar. 31, 2014) ("The NJCRA is substantially similar to the federal civil rights statutes, and 'courts have interpreted the statute in terms nearly identical to its federal counterpart." (internal citations and quotation marks omitted)).

Thus, the State is immune from suit under § 1983 and the NJCRA as it is not a "person" amenable to suit.  *See McCormick v. New Jersey*, Civ. No. 12-4676, 2013 WL 1164505, at *3 (D.N.J. Mar. 19, 2013) ("New Jersey is not recognized as a 'person' under § 1983 and therefore all § 1983 claims against the State will be dismissed.").

**C.    Section 1983 and NJCRA Claims Against the MCPO and Individual MCPO Defendants**

Plaintiffs assert claims against the MCPO and Individual MCPO Defendants, in both their official and individual capacities. The Court first addresses the claims against the MCPO and the Individual MCPO Defendants in their official capacities and will then turn to the individual capacity claims.

**1.    *Persons Not Amenable to Suit Under Section 1983***

The § 1983 and NJCRA claims against the MCPO and the Individual MCPO defendants in their official capacities must be dismissed because they are not "persons" amenable to suit under either statute.  When a county prosecutor's office and county prosecutors "engage in classic law enforcement and investigative functions, they act as officers of the State" and are not amenable to suit.  *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996).  Thus, all of Plaintiffs' allegations related to allegedly wrongful conduct undertaken by the MCPO Defendants in a law enforcement capacity are dismissed.

For example, Plaintiffs' claims for wrongful arrest (Counts One and Two), malicious prosecution (Counts Three and Four), unlawful seizure (Counts Five and Six), false

arrest/imprisonment (Count Seven), unlawful policy, custom, practice and inadequate training (Count Eight), failure to train (Count Nine), violations of the New Jersey Civil Rights Act (NJCRA) (Counts Ten and Eleven), intentional infliction of emotional distress (Count Twelve), violation of due process (Count Twenty), and violation and preemption under the Communications Decency Act (Count Twenty-Six) that stem from the MCPO Defendants' investigation and arrest of Plaintiffs are barred. *See Le. L. v. Marchese*, Civ. No. 20-6027, 2024 WL 4556020, at *4 (D.N.J. Oct. 22, 2024) (finding a detective was "not a person [amenable] to suit in her official capacity" under § 1983 where her "investigation on behalf of the [Bergen County Prosecutor's Office] to determine whether [the] [p]laintiff engaged in criminal misconduct involved classic law enforcement functions including interviewing . . . a potential victim . . . [and] the investigation's target").

Plaintiffs' claims for malicious prosecution (Count Fifteen) and civil conspiracy (Count Sixteen) also concern Defendants' investigation and testimony before the grand jury and are likewise barred under § 1983. *See Collazo v. Guarducci*, Civ. No. 15-2838, 2015 WL 7258854, at *1 (D.N.J. Nov. 16, 2015) ("Plaintiff contends [the] [d]efendant violated his constitutional rights by presenting false testimony to the grand jury, and by not presenting exonerating evidence to the grand jury . . . . The official capacity claim is not cognizable under 42 U.S.C. § 1983 because the misconduct alleged involves the prosecutor's 'classic law enforcement function' of conducting a criminal prosecution.").

Plaintiffs' claims for abuse of process (Counts Eighteen and Nineteen), violation of due process (Count Twenty-One), excessive bail (Count Twenty-Two),[9] violation of speedy trial rights

---

[9]    Regardless, the Court questions whether the MCPO Defendants are the proper defendants for Plaintiffs' excessive bail claim. *See Gaines v. Lange*, Civ. No. 23-21315, 2023 WL 7151365, at *2 (D.N.J. Oct. 31, 2023) ("Because the authority to set bail rests in the hands of the judge who

(Count Twenty-Three),[10] violation of the First Amendment (Count Twenty-Four), and violation of the Fourteenth Amendment Equal Protection Clause (Count Twenty-Five) also concern Defendants' conduct in initiating and prosecuting the case against Plaintiffs and would be barred under § 1983. *See Alfred v. New Jersey*, Civ. No. 13-0332, 2013 WL 4675536, at *10 (D.N.J. Aug. 29, 2013) ("There is no suggestion that the Atlantic City Prosecutors Office was engaging in anything but classic law enforcement functions in the prosecution of [the] [p]laintiff for harassment.").[11]  Thus, the MCPO and the Individual MCPO Defendants sued in their official capacities are not "persons" amenable to suit for these actions. *See Kaul*, 372 F. Supp. 3d at 244.

Plaintiffs argue that the press releases issued by the MCPO and the Individual MCPO Defendants were an administrative function rather than a law enforcement and investigative function, thus making the MCPO and the Individual MCPO Defendants sued in their official capacities "persons" amenable to suit under § 1983.  (ECF No. 70 at 46; ECF No. 79 at 8.) Plaintiffs, however, cite no authority that would support such a position based on the issuance of press releases.[12]

---

oversees a criminal defendant's initial appearance under New Jersey law, it is generally the judge who imposes bail who 'causes' a prisoner to be subject to bail, making the imposing judge the proper defendant for such a claim.").

[10]    Plaintiffs' speedy trial claim may also not be cognizable under § 1983 for additional reasons. *See Garrett v. Murphy*, Civ. No. 21-2810, 2022 WL 313799 (3d Cir. Feb. 2, 2022) ("The District Court properly dismissed [the plaintiff's] speedy trial claim brought under section 1983. A speedy trial claim necessarily seeks dismissal of the indictment and leads to immediate release from confinement, so it must be brought through a habeas petition after exhausting state remedies.")

[11]    Plaintiffs also bring a claim for negligence (Count Seventeen) under § 1983, but negligence is not cognizable under § 1983.  *See* Section III(E).

[12]    Plaintiffs attached both press releases as exhibits to their Complaint, (ECF No. 1-1 at 5-6, 18-19), which are properly before the Court on this motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public

While true that a prosecutor's office and county prosecutors who perform administrative functions "unrelated to the duties involved in criminal prosecution" are acting on behalf of the county and are subject to suit. *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 855 (3d Cir. 2014)*; Coleman*, 87 F.3d at 1499 ("[W]hen county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county and is subject to suit . . . ."). And statements to the press have been recognized as "administrative" in nature. *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 278 (1993). Courts, however, have addressed this issue in the context of individual capacity claims and the application of absolute and qualified immunity. *Kulwicki v. Dawson*, 969 F.2d 1454, 1466 (3d Cir. 1992) (providing that because communication with the press was not a "core prosecutorial activity," qualified immunity applies rather than absolute immunity). The Court is not aware of any authority that would support the proposition that the issuance of a press release announcing an arrest or indictment is "unrelated to the duties involved in criminal prosecution" and would support a claim against the county prosecutor's office or its employees in their official capacity. *Cf. Doe v. Burke*, 2021 WL 3625397, at *5 (N.J. Super. Ct. App. Div. Aug. 17, 2021) (recognizing that a prosecutor's remarks about the conclusion of an investigation may not be "functionally tied to the judicial process, but can be viewed as an integral part of a prosecutor's job and serve a vital public function") (quoting *Buckley*, 509 U.S. at 278).[13] Thus, in the absence of any caselaw to the contrary, the Court cannot conclude

---

record." (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

[13]    Plaintiffs cite two cases to support the proposition that "district attorney's offices" have been construed as "persons" under § 1983, however, the Court has been unable to locate either case. (*See* ECF No. 70 at 47 (citing "*Mairena v. Darby Twp.*, 2018 U.S. Dist. LEXIS 149052, at

that the MCPO and the Individual MCPO Defendants in their official capacity are "persons" subject to suit under § 1983.

Accordingly, the Court will dismiss Plaintiffs' § 1983 and NJCRA claims against the MCPO and Prosecutor Gramiccioni and Assistant Prosecutor Koping in their official capacities without prejudice.[14]  The Court addresses the potential liability of Prosecutor Gramiccioni and Assistant Prosecutor Koping in their individual capacities next.

### 2. Section 1983 and NJCRA Claims Against the Individual MCPO Defendants in Their Individual Capacities

While state actors are typically shielded from liability for actions performed in their official capacity, state actors may still face liability for conduct performed in their individual capacity. *See Kaul*, 372 F. Supp. 3d at 245.  "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Here, Plaintiffs named the Individual MCPO Defendants in their "personal, individual and official capacities." (ECF No. 1 at 1.)  In response, the Individual MCPO Defendants have raised the defenses of absolute and qualified immunity.

#### a. Absolute Immunity

The Individual MCPO Defendants assert that they are protected from suit by absolute prosecutorial immunity. (*See* ECF No. 77-2 at 20-31.)  Prosecutors enjoy immunity from liability arising from a civil lawsuit for acts they take during their role as a prosecutor. *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976) ("[A] prosecutor enjoys absolute immunity from § 1983 suits for

---

*23 n.9 (E.D. Pa. Aug. 31, 2018)" and "*Jang v. Klinger*, 2019 U.S. Dist. LEXIS 140387, at *29 (E.D. Pa. Aug. 19, 2019)").)

[14]    Dismissal of the claims against the MCPO and the Individual MCPO Defendants in their official capacities is also appropriate on the separate basis that Plaintiff has not stated a claim for defamation under § 1983. *See* Section III(C)(2).

damages when he acts within the scope of his prosecutorial duties."); *LeBlanc v. Stedman*, 483 F. App'x 666, 669 (3d Cir. 2012) (same).  To hold otherwise would diminish the public's trust of a prosecutor's office if he or she "were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."  *Imbler*, 424 U.S. at 424-25.

"[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  This immunity includes, but is not limited to, acts such as collecting evidence, evaluating the collected evidence, and failing to conduct an adequate investigation before filing charges.  *Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (citing cases).  "[E]ven 'groundless charges' are protected. . . ."  *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992).  When evaluating whether absolute prosecutorial immunity applies, courts should follow a functional approach and review the nature of the conduct rather than a person's status as a prosecutor.  *Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020).  Prosecutors may not enjoy immunity when they are performing investigative or administrative tasks such as giving advice to police during an investigation, making statements to the press, or when acting as a witness in support of a warrant.  *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009).

Plaintiffs allege that Assistant Prosecutor Koping failed to review and produce exculpatory evidence, (ECF No. 1 ¶ 92), and wrongfully caused Robert to pay excessive bail (*see, e.g.*, *id.* ¶ 278).  Plaintiffs also claim that Detective Sosdian submitted false affidavits and made unlawful seizures.  (*See, e.g.*, *id.* ¶¶ 37, 129).  Further, Plaintiffs allege that Prosecutor Gramiccioni and Assistant Prosecutor Koping defamed Plaintiffs by issuing press releases about their charges and

indictment. (*Id.* ¶¶ 208-227.) The Individual MCPO Defendants argue that all of these actions are protected by absolute prosecutorial immunity and/or the litigation privilege.

The Court concludes that all of Assistant Prosecutor Koping's actions that were taken in her role as an advocate are protected by absolute immunity. Assistant Prosecutor Koping was acting as an advocate of the State when addressing Plaintiffs' bail conditions. *See Santos v. New Jersey*, Civ. No. 09-1804, 2009 WL 2778320, at *4 (D.N.J. Aug. 31, 2009), *aff'd*, 393 F. App'x 893 (3d Cir. 2010) (finding that a prosecutor who allegedly "sought an excessive bail and delayed the [defendant's] trial" was entitled to prosecutorial immunity). And even accepting Plaintiffs' allegation that Assistant Prosecutor Koping withheld exculpatory evidence, that too is protected by prosecutorial immunity. *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006) ("It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity."); *cf. id.* at 136 ("[D]estroying exculpatory evidence is not related to a prosecutor's prosecutorial function."). Thus, all of Plaintiffs' claims against Assistant Prosecutor Koping that relate to the prosecution of Plaintiffs are barred by absolute immunity. Dismissal of these claims as against Assistant Prosecutor Koping is therefore appropriate.

Plaintiffs also allege that Detective Sosdian "proceeded without probable cause; failed to properly execute search warrants; illegally seized Plaintiff Philip Ianuale; committed perjury before the grand jury; lied to the trial court regarding his ability to copy the exculpatory videos; destroyed a New York corporation without a federal warrant and illegally seized Plaintiff Robert Ianuale's vehicle." (ECF No. 79 at 10.) Defendants argue that Detective Sosdian's actions fall under the scope of an advocate's role, (ECF No. 80 at 11-12), while Plaintiffs contend that Detective Sosdian's actions were merely investigatory, (ECF No. 79 at 10).

Investigators—like Detective Sosdian—who perform "investigative work in connection with a criminal prosecution deserve the same absolute immunity as the prosecutor." *Fuchs*, 260 F. App'x at 475 (*quoting Davis v. Grusemeyer*, 996 F.2d 617, 632 (3d Cir.1993)). Even pre-indictment actions such as obtaining, reviewing and evaluating evidence in preparation for prosecution are protected under absolute immunity. *Odd v. Malone*, 538 F.3d 202, 211 n.3 (3d Cir. 2008) ("[S]ome pre-indictment acts—like obtaining, reviewing, and evaluating evidence in preparation for prosecution . . . may be advocative and entitle a prosecutor to absolute immunity."). Thus, to the extent Detective Sosdian was acting as an "advocate[] rather than [an] ]investigator[]," he is entitled to absolute immunity. *Fogle*, 957 F.3d at 163.

Here, several of the allegations against Detective Sosdian relate to his role as an advocate, including the allegations that he lied to the court and to the grand jury, so absolute immunity applies. *See Davis*, 996 F.2d at 630 ("[C]ourts have repeatedly extended absolute immunity to a prosecutor who suborns perjury, or even commits perjury or falsifies evidence, so long as the acts were done as part of the prosecutor's role in the judicial system."); *Franks v. Temple Univ.*, 514 F. App'x. 117, 122 (3d Cir. 2013) (holding that a "witness, including a police officer, has absolute immunity with respect to *any* claim based on the witness' testimony."); *Rose v. Bartle*, 871 F.2d 331, 345 (3d Cir. 1989) (holding that the defendants were absolutely immune for "alleged solicitations of perjury" that "occurred in preparation for the grand jury proceedings").

Plaintiffs, however, contend that Detective Sosdian does not enjoy absolute immunity for certain investigatory acts. (ECF No. 70 at 32-33.) The Court agrees, however, it finds that Detective Sosdian is entitled to qualified immunity for the allegations related to making false

statements in affidavits leading to Plaintiffs' arrests.[15]  *See Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997) (declining to extend absolute immunity to shield a prosecutor that makes a false statement of fact in an affidavit supporting an arrest warrant); *Fogle*, 957 F.3d at 160 ("[A] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.") (citation omitted); *Barton v. Curtis*, Civ. No. 2005-2, 2008 WL 5082415, at *4 (D.V.I. Nov. 25, 2008), *aff'd*, 355 F. App'x 635 (3d Cir. 2009) (collecting cases).

Finally, Prosecutor Gramiccioni and Assistant Prosecutor Koping argue they should be protected by absolute immunity for the press releases about Plaintiffs' charges.[16]  (ECF No. 77-2 at 25.)  While conceding that these types of statements to the press "have been almost universally found to be excluded from the protection of absolute privilege," Prosecutor Gramiccioni and

---

[15]     Plaintiffs reference other alleged acts which they claim were "investigatory."  (ECF No. 70 at 32-33.)  However, none of these alleged acts are sufficient to state a claim against the MCPO Defendants.  For example, Plaintiffs' allegation regarding the unlawful seizure of Philip appears to be directed towards the Hazlet Police Department.  (*See* ECF No. 1 ¶ 55) ("On March 28, 2016, Plaintiff Philip Ianuale was arrested by the Hazlet Police Department and charged with Third Degree Resisting Arrest, Fourth Degree Obstruction, and Disorderly Persons for Possession of Marijuana and Possession of Drug Paraphernalia.").  To the extent that Plaintiffs claim Detective Sosdian also participated in Philip's arrest, the Court finds that Philip—who Plaintiffs allege was released on his own recognizance, without alleging that he was ever transported from his home (ECF No. 1 ¶ 58)—has not alleged a sufficient seizure under the Fourth Amendment.  *See Penberth v. Krajnak*, 347 F. App'x 827, 829 (3d Cir. 2009) (holding that the plaintiff failed to allege a sufficient deprivation of liberty where he was arrested and detained for less than 40 minutes); *Elfar v. Twp. of Holmdel*, Civ. No. 22-5367, 2024 WL 415691, at *10 (D.N.J. Feb. 5, 2024) ("Plaintiff was charged sometime after he was booked at 3:48 a.m. and before or at the time he was picked up by his son at 4:48 a.m. . . . . [T]his *de minimis* period of detention is not a 'seizure significant enough to constitute a Fourth Amendment violation.'" (quoting *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005))).

Plaintiffs also allege that the Detective Sosdian "destroyed a 17-year-old New York corporation," (ECF No. 1 ¶ 61), but the MCPO Defendants correctly point out that Plaintiffs cite no caselaw finding that such an allegation implicates a "clearly established right" to overcome qualified immunity. (ECF No. 80 at 13.)  *See Karkalas*, 845 F. App'x at 118.

[16]     While Plaintiffs also bring this claim against the MCPO, the MCPO is not a "person" amenable to suit under § 1983.  *See* Section III(C)(1).

Assistant Prosecutor Koping nevertheless argue that certain exceptions apply here.  (ECF No. 77-2 at 25-27.)  Relying on state-court cases from Indiana and Pennsylvania, Defendants argue that their press releases should be protected by prosecutorial immunity because they were made "in furtherance of serving as the State's advocates and communicating important developments to the public."  (*Id.* at 26-27.)  The Court, however, sees no reason to depart from the well-established rule that "absolute immunity does not apply . . . when the prosecutor makes statements to the press."  *Van de Kamp*, 555 U.S. at 343 (quoting *Buckley*, 509 U.S. at 277)[17] .

For these reasons, absolute immunity does not apply to Plaintiffs' allegations regarding the press releases or to the allegations that Detective Sosdian submitted false affidavits in support of Plaintiffs' arrests.  The remainder of Plaintiffs' § 1983 and NJCRA claims are barred by absolute immunity and are dismissed without prejudice.

     *b. Qualified Immunity*

To the extent that the Individual MCPO Defendants are not protected by absolute immunity, they argue that they are nevertheless protected by qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."  *Schneyder v. Smith*, 653 F.3d 313, 331 (3d Cir.2011) (internal quotations and citations omitted).  Moreover,

---

[17] While the MCPO Defendants argue that the litigation privilege bars most of Plaintiffs' claims, they concede that the out-of-court press statements arguably fall outside of the litigation privilege.  The Court agrees that the litigation privilege does not cover these statements.  *See Buchmiller v. Suntuity Solar, LLC*, Civ. No. 21-20412, 2022 WL 3908070 (D.N.J. Aug. 20, 2022) (declining to apply the litigation privilege to an extra-judicial press conference).

"[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity aims to resolve "insubstantial claims" against government officials prior to discovery. *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987).

"At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional violation and (ii) whether the asserted constitutional right is clearly established." *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021). The questions may be answered in either order. *Pearson*, 555 U.S. at 242.

<em>i     Press Releases</em>

Plaintiffs seek to hold Prosecutor Gramiccioni and Assistant Prosecutor Koping liable for issuing defamatory press statements about Plaintiffs' arrest and indictment. (*See* ECF No. 1 ¶¶ 218-227.) However, Prosecutor Gramiccioni and Assistant Prosecutor Koping are entitled to qualified immunity because Plaintiffs have not alleged that the act of issuing the press releases violate a clearly established right. [18] *See Kulwicki*, 969 F.2d 1454 at 1468 ("To the extent that [the plaintiff] was 'defamed' by the media publication, therefore, he does not allege a violation of clearly established federal law. There is no federal constitutional right to reputation . . . and violations of state law, including defamation, are insufficient to state a claim under § 1983."); *see*

---

[18]    The United States Supreme Court has held that courts are not required to address both prongs of the qualified immunity test if the plaintiff has not shown that a claimed right was clearly established. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) ("[A] court can often avoid ruling on the plaintiff's claim that a particular right exists. If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages. The court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit.").

*also Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (describing the "lack of any constitutional protection for the interest in reputation"). Plaintiffs' claims related to the press releases will therefore be dismissed.

Even if Prosecutor Gramiccioni and Assistant Prosecutor Koping were not entitled to qualified immunity, dismissal would still be appropriate on the separate ground that Plaintiffs have not stated a claim for defamation under § 1983. "The law is well settled that defamation, 'standing alone and apart from any other governmental action,' is insufficient to state a claim for relief under 42 U.S.C. § 1983 . . . ." *Good v. City of Sunbury*, 352 F. App'x 688, 690 (3d Cir. 2009) (quoting *Paul v. Davis*, 424 U.S. 693, 694 (1976)). The Third Circuit has explained that "reputation alone is not an interest protected by the Due Process Clause. Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Id.* (quoting *Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir.2008)). This has been referred to as the "stigma-plus" test. *Id.* The Third Circuit's decisions regarding what can constitute a tangible interest (*i.e.*, the "plus" prong) have generally arisen in the public employment context. *See Carbone v. City of New Castle*, Civ. No. 15-1175, 2016 WL 406291, at *5 (W.D. Pa. Feb. 3, 2016).

In this case, Plaintiffs claim that they "suffered injury to their reputation from an official's false statement." (ECF No. 1 ¶ 222.) Further, Plaintiffs allege they "suffered a burden or alteration of status or rights due to the defamatory statements by Defendants Monmouth County Prosecutor's Office, Margaret Koping and Christopher J. Gramiccioni" and specify that this "state-imposed burden deprived Plaintiffs of property, employment, and right to a fair trial with an impartial jury of their peers which are protected liberties under due process." (*Id.* ¶ 214.)

Plaintiffs never had a trial, (ECF No. 59 ¶¶ 28, 31), so they cannot state a § 1983 claim based on their "right to a fair trial." *See Anderson v. Venango Cnty., Pa.*, 458 F. App'x. 161, 164 (3d Cir. 2012) ("[T]to prevail on a § 1983 claim predicated on the right to a fair trial, the plaintiff must show that the government's alleged pretrial misconduct resulted in an unfair trial."); *Hensley v. Carey*, 818 F.2d 646, 649 (7th Cir. 1987) (noting that the defendant "could not possibly have been deprived of his right to a fair trial since he was never tried").  Moreover, Plaintiffs do not identify what "property" or "employment" they were deprived of because of the allegedly defamatory statements.  Moreover, Plaintiffs do not cite any cases finding that these interests satisfy the "plus" prong of the stigma-plus analysis, and the Third Circuit has rejected similarly vague references to liberty interests.  *See Clark v. Twp. of Falls*, 890 F.2d 611, 620 (3d Cir. 1989) ("The possible loss of future employment opportunities is patently insufficient to satisfy the requirement . . . that a liberty interest requires more than mere injury to reputation.").  Plaintiffs also claim that they "suffered loss of liberty, humiliation, mental anguish, [and] depression" as a result of the alleged defamation.  (ECF No. 1 ¶ 221.)  But this allegation is also insufficient, without more, to state a stigma-plus defamation claim.  *See Good*, 352 F. App'x at 692 ("If we were to hold that the emotional trauma resulting from government defamation was, without more, sufficient to constitute the 'plus' factor necessary in a Fourteenth Amendment due process liberty claim, virtually every defamation plaintiff would have a constitutional claim ready-made to survive at least to summary judgment, because defamatory remarks or acts, by their very nature, often cause severe distress to their target.").  Accordingly, Plaintiffs do not state a claim for defamation under § 1983.

To the extent Plaintiffs can overcome the Individual MCPO Defendants' qualified immunity and their failure to state a stigma-plus defamation claim, the Court's dismissal is without prejudice.

<em>ii        Detective Sosdian's Affidavit</em>

Plaintiffs allege that their arrests were caused by Detective Sosdian signing a false affidavit based on information provided to him by Robert's cyber-stalker.  As alleged in their Complaint:

> Notwithstanding the information supplied by Plaintiff Robert Ianuale regarding his cyberstalker/swatter, Defendant John Sosdian failed to investigate either the cyber-stalking incidents or the swatting incidents.
>
> Based instead on the information provided by the cyber-stalker himself (i.e., Shane Johnson), Defendant John Sosdian initiated false affidavits to justify the arrest and search warrants for Plaintiff Robert Ianuale and then proceeded to arrest Plaintiff Robert Ianuale on March 28, 2016.
>
> On March 23, 2016, based on information supplied by Shane Johnson, Defendant John Sosdian, without due diligence in verifying or fact checking any of the information supplied to him, and knowingly providing false and misleading statements in the warrant affidavits, obtained search and arrest warrants for Plaintiff Robert Ianuale and knowingly made false statements or omissions that created a falsehood, specifically stating that Plaintiff Robert Ianuale was the "owner/operator" of SwerveCast.
>
> Plaintiff Robert Ianuale did not own or operate SwerveCast as alleged by Defendant John Sosdian. In fact, Resorb owned and operated its broadcasting service product known as SwerveCast outside of the jurisdictional limits of New Jersey, and is federally protected under the U.S.C. Section 230.
>
> [(ECF No. 1 ¶¶ 36-39.)]

Accordingly, Plaintiffs claim their arrest lacked probable cause.  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

29

To succeed on their claim, Plaintiffs must show that (1) Detective Sosdian "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions" in the affidavit; and (2) those "statements or omissions are material, or necessary, to the finding of probable cause". *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citations omitted); *see also Franks v. Delaware*, 438 U.S. 154 (1978). The allegations in the Complaint are insufficient to state a claim.

The crux of Plaintiffs' claim is that Detective Sosdian improperly relied on the information supplied by Shane Johnson and failed to investigate Robert's prior allegations about his stalker. (*See, e.g.*, ECF No. 1 ¶ 36.) Plaintiffs also allege that because "Defendant John Sosdian has a nephew named Shane Johnson, and the cyber-stalker (e.g., Tim Shane Johnson) had claimed to have a relative in a New Jersey law enforcement position, there is an apparent relationship between Shane Johnson and Defendant John Sosdian, which if true, would undermine the entire criminal case." (*Id.* ¶ 255.)

Failing to fully investigate Plaintiffs' claims, however, does not strip Detective Sosdian of qualified immunity. *See Cortez v. McCauley,* 478 F.3d 1108, 1139 n.3 (10th Cir. 2007) ("[T]he law books are replete with cases indicating that the fact that officers might have conducted a more thorough investigation does not negate the existence of probable cause." (citations omitted)); *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) ("Although an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause."); *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998) ("The inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation."). As a result, the Court finds that

Detective Sosdian is entitled to qualified immunity for declining to search for potentially exculpatory information.

Plaintiffs allege that Detective Sosdian submitted a false affidavit leading to their arrest, but Plaintiffs' allegations are merely conclusory. (*See, e.g.*, ECF No. 1 ¶¶ 118-120 ("Defendant John Sosdian, in the warrant affidavits, knowingly made false statements, or omissions that created a falsehood. Defendant John Sosdian made those false statements or omissions either deliberately, or with a reckless disregard for the truth. Those false statements or omissions were material, or necessary, to the finding of probable cause for the arrest and search warrants.").)

The only non-conclusory allegation Plaintiffs make is that Detective Sosdian falsely stated that "Plaintiff Robert Ianuale was the 'owner/operator' of SwerveCast." (ECF No. 1 ¶ 39.) Plaintiffs therefore must allege that Detective Sosdian's statement about Robert's connection to SwerveCast was made with reckless disregard for the truth. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) ("[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." (quoting *Wilson*, 212 F.3d at 787)). Plaintiffs allege that SwerveCast is operated "outside of the jurisdictional limits of New Jersey, and is federally protected under the U.S.C. Section 230," thus making Detective Sosdian's statement false. (*See* ECF No. 1 ¶ 39.)

Even accepting Plaintiffs' allegation that Robert does not own/operate SwerveCast, Plaintiff has not alleged any facts to suggest that Detective Sosdian made these allegations with a reckless disregard for the truth.[19] Indeed, Plaintiffs' allegations indicate otherwise. In the

---

[19]    Even if Plaintiffs plausibly alleged that Detective Sosdian acted with reckless disregard for the truth, the offending statements or omissions would still have to be material to the finding of probable cause. *See Cummings v. City of Philadelphia*, 137 F. App'x. 504, 506 (3d Cir. 2005) ("The District Court properly concluded that the omissions were made with reckless disregard for the truth. We also agree with the District Court's conclusion that the omissions were not

Complaint, Plaintiffs characterize Robert as a "shareholder and/or officer of Resorb" and that he "was self-employed in several business ventures, including Resorb Networks Inc." (*Id.* ¶¶ 16 and 335.).[20]  In turn, Plaintiffs also allege that Resorb operates SwerveCast. (ECF No. 1 ¶ 39.)  Finally, Plaintiffs allege that Robert was involved with the launch and operations of SwerveCast, outlining in the Complaint that:

> Plaintiff Robert Ianuale had engaged social media apps as a humorous (albeit abrasive to some) "shock-jock" online personality called Fist Pump", in an effort to both network throughout the Internet, using this entertainment persona for that purpose, as well as build a following of viewers/users in order to help launch a service provider with a live online broadcasting service called SwerveCast

> (ECF No. 1 ¶ 16.)

Based on Plaintiffs' own allegations, Plaintiffs have not sufficiently alleged that Detective Sosdian acted with reckless disregard for the truth in asserting that Robert was the owner/operator of SwerveCast as opposed to the statement merely being incorrect.  *Mervilus v. Union Cnty.*, 73 F.4th 185, 194 (3d Cir. 2023) ("Evidence is not fabricated if it "is incorrect or simply disputed."). Plaintiffs have not adequately alleged that Detective Sosdian had "obvious reasons to doubt" the information set forth in his affidavit to defeat qualified immunity.  *See  Raban v. Butler*, Civ. No. 11-5656, 2012 WL 592328, at *5 (E.D. Pa. Feb. 22, 2012) ("Mere negligence or inadvertent mistake on the part of an officer will not defeat qualified immunity."); *cf. Shamberger v. Glover*, Civ. No. 10-3236, 2012 WL 12517917, at *10 (D.N.J. May 23, 2012) (finding that qualified immunity did not shield officer who coerced statements he knew to be false).  Since Plaintiffs do

---

material.").  Plaintiffs have not alleged any facts to suggest that Detective Sosdian's allegedly false statements were material.

[20]    In their opposition brief, Plaintiffs contend that Robert is the CEO of Resorb.  (ECF No. 70 at 13.)

not plausibly allege that Detective Sosdian violated a clearly established statutory or constitutional right, the Court finds that—to the extent Detective Sosdian's actions are not protected by absolute immunity—he is entitled to qualified immunity.  *See Karkalas*, 845 F. App'x at 118.[21]

### D.    Section 1983 Claims Against Local Entities

#### 1.    *Monmouth County*

The County asserts that all of Plaintiffs' claims against it must be dismissed for failure to state a claim under Rule 12(b)(6).  The County further argues that dismissal is warranted because Plaintiffs do not meet Rule 8's pleading requirements.  The Court agrees that the claims against the County must be dismissed.

Plaintiffs allege in their Complaint that the MCPO Defendants were "working under the authority and direction of Defendants County of Monmouth." (ECF No. 1 ¶¶ 11-13.)  The County contends that the claims against it must be dismissed because the County has no role in overseeing the law enforcement functions of county prosecutor's offices and argue that Plaintiffs "conflate the responsibilities of the County with those of the Monmouth County Prosecutors Office." (ECF No. 63-1 at 9; ECF No. 71 at 1.)  In response, Plaintiffs argue that "counties act as municipal corporations rather than arms of the State when promulgating policies related to law enforcement" and cite multiple cases in support.  (ECF No. 70 at 65-66 (citing *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153 (3d Cir. 2014); *Carver v. Plyer*, 115 F. App'x 542, 545 (3d Cir.

---

[21]    Because the Court finds that Plaintiffs' claims against the Individual MCPO Defendants are barred by absolute and qualified immunity, it will not address whether the so-called *Heck* bar, as set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), also applies to bar Robert's claims.  *See Padilla v. Welsh*, Civ. No. 17-5990, 2017 WL 3610489, at *2 (D.N.J. Aug. 21, 2017) ("Because [the] [d]efendant's immunity to suit under § 1983 is dispositive of [the] [p]laintiff's sole federal claim, this [c]ourt need not and does not address whether [the] [p]laintiff's claims are barred by the doctrine announced in [*Heck*]."); *Atwell v. Schweiker*, 346 F. App'x 752, 753 (3d Cir. 2009) (declining to address the *Heck* bar where dismissal was appropriate on other grounds).

2004); and *Merman v. City of Camden*, 824 F. Supp. 2d 581, 591 (D.N.J. 2010)).)  But as the County correctly argues, none of these cases stand for that proposition—nor do they even involve claims against a county government or prosecutor's office.  (ECF No. 71 at 2.); *see Foglia*, 754 F.3d at 153 (involving a qui tam action under the False Claims Act against a dialysis services company).  Plaintiffs have not cited, nor is the Court aware of any authority demonstrating that the County may be held responsible for the MCPO's decisions under the facts alleged in Plaintiffs' Complaint.  *See Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009) (noting that county prosecutor's offices "'remain[] at all times subject to the supervision and supersession power of the Attorney General' when performing [their] prosecutorial function and [are] not autonomous from the State" (quoting *Wright v. State*, 778 A.2d 443, 462 (N.J. 2001)); *Wright*, 778 A.2d at 452 ("[T]he county prosecutor's law enforcement function *is unsupervised by county government* or any other agency of local government. . . ." (emphasis added)).

Additionally, Plaintiffs' allegations as to the MCPO relate solely to actions taken in its investigatory and prosecutorial capacity.  (*See generally* ECF Nos. 1 & 59.)  Plaintiffs have not alleged any specific actions on the part of the County that could give rise to liability beyond its conclusory allegation that the MCPO Defendants were "working under the authority and direction of" the County.  (ECF No. 1 ¶¶ 11-13.)

Plaintiffs attempt to state a claim against the County on a theory of municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 662 (1978). (*See, e.g.*, ECF No. 1 ¶ 175 ("Acting under color of law pursuant to official policy, practice or custom, Defendant[] . . . County of Monmouth . . . intentionally, knowingly, recklessly and/or with deliberate indifference failed to train, instruct, supervise, control and discipline on a continuing basis Defendants John Sosdian and John Does 1-10 in their duties to refrain from (1) unlawfully

arresting and harassing citizens; (2) intentionally, recklessly and/or negligently misrepresenting the facts of arrest and/or police citizen encounters; (3) falsifying police and/or other official records; (4) withholding and/or mishandling evidence; and/or (5) making false arrests."). Plaintiffs fail to do so. "It is well established that local government units cannot be held liable via *respondent superior* for the constitutional violations of their employees 'unless action pursuant to official municipal policy of some nature caused a constitutional tort' to be committed by such employees." *Edwards v. Lindenwold Police Dep't*, Civ No. 21-13076, 2022 WL 621064, at *6 (D.N.J. Mar. 3, 2022) (citing *Monell*, 436 U.S. at 691). Thus, to adequately plead a claim under *Monell*, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 659 (3d Cir. 2009). A policy consists of "an official proclamation, policy, or edict" issued by a "decisionmaker possess[ing] final authority to establish municipal policy." *Edwards*, 2022 WL 621064, at *6 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). On the other hand, a custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Plaintiff's allegations against the County fail under *Monell* because the Complaint does not set forth any specific policy or custom of the County. To sustain a supervisor liability claim under §1983, a plaintiff must set forth non-conclusory allegations that the supervisor "'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quoting

*A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).  Here, Plaintiffs rely on conclusory allegations to establish that the County had an impermissible "policy" or "custom," without alleging any specific policies or customs of the County.  (*See, e.g.*, ECF No. 1 ¶¶ 172-82.)  *See McTernan*, 564 F.3d at 659 ("Because [the plaintiff] does not adequately plead a custom or policy, or a link between the challenged restriction and a municipal decisionmaker, the restriction cannot 'fairly be said to represent official policy,' warranting the imposition of municipal liability.").

### 2.    *The Hazlet Defendants*

The Hazlet Defendants submit that Plaintiffs' claims against them must be dismissed for numerous reasons, including that Plaintiffs fail to state a claim upon which relief can be granted and fail to comply with Rule 8's pleading requirements.  (*See generally* ECF No. 64.)  The Court agrees that dismissal is warranted.

Plaintiffs seek to recover from the Hazlet Defendants under a "policy, practice, and/or custom" theory under *Monell*.  (*See, e.g.*, ECF No. 1 ¶ 175 ("Acting under color of law pursuant to official policy, practice or custom, Defendants . . .  Hazlet Township [and] Hazlet Township Police Department . . . intentionally, knowingly, recklessly and/or with deliberate indifference failed to train, instruct, supervise, control and discipline on a continuing basis Defendants John Sosdian and John Does 1-10. . . .").  The Hazlet Defendants argue that Plaintiffs have not pled facts describing any policy or practice that Hazlet is responsible for.  (*See* ECF No. 64-1 at 28.)  As addressed above, a plaintiff seeking to hold a municipality liable under *Monell* must "identify a custom or policy, and specify what exactly that custom or policy was."  *McTernan*, 564 F.3d at 659.  And although Plaintiffs concede they cannot hold Hazlet liable on a theory of *respondeat superior*, they urge the Court not to employ an "overly rigid pleading requirement."  (ECF No. 70

at 62-63.)  To support that proposition, Plaintiffs cite to "*Beim v. Hulick*, 638 F.3d 163, 174 (3d Cir. 2011)," which Plaintiffs claim contains the following language:

> Although the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly* raised the notice pleading requirements under Federal Rule of Civil Procedure 8(a), neither *Twombly* nor its progeny allows this court to impose a more heightened pleading requirement for § 1983 cases alleging municipal liability.
>
> [(ECF No. 70 at 63.)]

Like the Hazlet Defendants, however, this Court has been unable to locate that case or any case with similar language.  (ECF No. 76 at 11.)

Turning to Plaintiffs' factual allegations against the Hazlet Defendants, the Court finds that, similar to the claims against the County, Plaintiffs have not stated a claim for relief.  The only non-conclusory factual allegation against the Hazlet Defendants is that:

> On March 28, 2016, Plaintiff Philip Ianuale was arrested by the Hazlet Police Department and charged with Third Degree Resisting Arrest, Fourth Degree Obstruction, and Disorderly Persons for Possession of Marijuana and Possession of Drug Paraphernalia.
>
> Plaintiff Philip Ianuale did not have any marijuana or drug paraphernalia on his person at the time of arrest.
>
> [(ECF No. 1 ¶¶ 55-56.)]

Nowhere in Plaintiffs' Complaint do they set forth any factual averments about any policy or training undertaken by the Hazlet Defendants to support a *Monell* claim, so their claims against the Hazlet Defendants will therefore be dismissed. *See McTernan*, 564 F.3d at 659.[22]

---

[22]    Plaintiffs' claims against Hazlet Township are dismissed without prejudice.  However, their claims against the Hazlet Township Police Department are dismissed with prejudice because local police departments are not subject to suit under § 1983. *See Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d Cir. 2016) ("Although local governmental units may constitute "persons" against whom suit may be lodged under § 1983, a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part.").

### E.    Section 1983 Claim for Negligence Against All Defendants

Plaintiffs bring a claim for negligence under § 1983.  (ECF No. 70.)  However, "[c]laims of negligence do not rise to the level of constitutional protection under § 1983, even when unfortunate harm occurs."  *Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 732 (D.N.J. 2015).  Accordingly, Count Seventeen will be dismissed with prejudice as to all Defendants.

### F.    Claims for Injunctive Relief from the Individual MCPO Defendants

Under the *Ex Parte Young* exception, Plaintiffs are not precluded from seeking prospective injunctive relief from state officials.  *See Ex Parte Young*, 209 U.S. 123.  In their initial Complaint, Plaintiffs make generalized requests for injunctive relief based on constitutional violations.  (*See, e.g.*, ECF No. 1 ¶ 327 ("As a direct and proximate result of Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiff Robert Ianuale has suffered irreparable harm, including the loss of his constitutional rights, entitling Plaintiff Robert Ianuale to declaratory and injunctive relief and nominal damages.").)  In their Supplemental Pleading, however, Plaintiffs seek the return of property that was previously seized.  (ECF No. 59 ¶ 17.)  The only property Plaintiffs specifically reference in their initial Complaint is Robert's vehicle, but Plaintiffs' Supplemental Pleading refers to "other property" that is being withheld.  (*Id.* ("[T]he MCPO and the State conspired to violate Plaintiff Robert Ianuale's and Plaintiff Philip Ianuale's rights by refusing to return their property, including a vehicle that was illegally seized, even though neither the vehicle nor any of their other property was associated with the alleged crimes.").[23])

---

[23]    Plaintiffs explain in their opposition brief that this property includes "several cellphones, laptops, desktop computers, business documents, contracts, invoices, digital media, USB drives, disk drives, and hundreds of miscellaneous printed documents."  (ECF No. 80 at 3.)  However, a party may not amend their Complaint by way of a brief.  *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

The MCPO Defendants move for summary judgment as to Robert's claim for the return of his vehicle.  In support of their Motion, the MCPO Defendants submit a letter sent to Robert in April 2024 advising him that his vehicle was being released back to him.  (ECF No. 77-1 ¶ 3; ECF No. 77-4 at 2.)  The MCPO Defendants therefore argue that Robert's claim for his vehicle is now moot.  Plaintiffs do not dispute receiving the letter, but they contend that the claim is not moot because of "additional factors, such as the condition of the property, the costs associated in retrieving said property, as well as the time and expenses in securing the property from Defendants."  (ECF No. 79 at 2.)  The relief Plaintiffs now seek as to the vehicle is functionally equivalent to a request for damages that is barred by the Eleventh Amendment.  *See Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir. 1981) (noting that the *Ex Parte Young* exception does not apply to a suit against a state agency "measured in terms of a monetary loss resulting from a past breach of a legal duty" (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974))).  Finding no dispute of material fact, the Court accordingly grants summary judgment to the MCPO Defendants on Robert's claim for the return of his vehicle as now moot.  *See Donovan ex rel. Donovan v. Punxsutawney Area School Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) ("The availability of declaratory [and injunctive] relief depends on whether there is a live dispute between the parties."); *Jersey Cent. Power & Light Co. v. NJ*, 772 F.2d 35, 40 (3d Cir. 1985) ("A declaratory judgment is available only so long as there is an actual controversy [between] the parties.")

As to the remainder of Plaintiffs' requests for injunctive relief, the MCPO Defendants move to dismiss on two grounds.  First, they argue that Plaintiffs do not state a claim for *prospective* relief.  (ECF No. 77-2 at 38.)  Second, they claim that to the extent Plaintiffs seek the return of property other than Robert's vehicle, those claims are compensable by money damages.  (ECF No. 80 at 3-4.)  The Court addresses these arguments in turn.

A plaintiff "seeking prospective injunctive relief must allege a real and immediate threat of future injury." *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 478 (D.N.J. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). "Allegations of exposure to illegal conduct in the past alone, without a showing of continuing adverse effects, do not demonstrate a case or controversy entitling a plaintiff to prospective injunctive relief." *Id.* (citing *Lyons*, 461 U.S. at 101-02. A plaintiff must show that a real and imminent harm will occur, while a mere possibility of future harm will not suffice. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 300–01 (3d Cir. 2012), *cert. denied*, 569 U.S. 960 (2013).

The MCPO Defendants argue that Plaintiffs' claims for injunctive relief related to alleged constitutional violations must be dismissed because Plaintiffs "failed in their complaint to identify specific factual support for the contention that some future deprivation of federal rights is imminent that can be redressed through an injunction." (ECF No. 77-2 at 38.) The Court agrees. Plaintiffs have not set forth any specific future harm they will suffer, and their general allegations related to constitutional violations are plainly insufficient to entitle them to prospective injunctive relief. *See, e.g.*, *Surina v. S. River Bd. of Educ.*, Civ. No. 20-2804, 2022 WL 264464, at *3 (3d Cir. Jan. 27, 2022) (affirming the district court's determination that the plaintiff failed to state a claim for prospective injunctive relief where there were "no alleged facts indicating that [the State of New Jersey's] purported violations of constitutional law were ongoing").

Aside from Robert's vehicle, Plaintiffs allege that other property—including several cellphones, laptops, desktop computers, business documents, contracts, invoices, digital media, USB drives, disk drives, and hundreds of miscellaneous printed documents—is still held by the MCPO Defendants. (ECF No. 79 at 2-3.) Plaintiffs argue—for the first time in their opposition brief—that this puts Plaintiffs in an imminent threat of future harm. (*Id.*) Defendants contend that

Plaintiffs can instead seek money damages for the loss of their property, making injunctive relief improper. (ECF No. 80 at 4.)   Given the lack of specificity in Plaintiffs' Complaint about any property besides Robert's vehicle, Plaintiffs' claims for injunctive relief will be dismissed without prejudice. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").   Plaintiffs have also not alleged that the continued withholding of these specific items will result in a real and immediate threat of future injury that can only be addressed by way of injunctive relief.

### G.    Tort-Based Claims Against All Defendants

All Defendants argue that Plaintiffs' tort-based claims must be dismissed because Plaintiffs failed to comply with the New Jersey Tort Claims Act (NJTCA).   The Court finds that Plaintiffs' claim for intentional infliction of emotional distress must be dismissed.[24]

Pursuant to the NJTCA, prior to asserting a tort claim against a public entity for "death or for injury or damage to person or to property," the plaintiff must file a notice within ninety days of the accrual of the claim.   N.J. Stat. Ann. § 59:8-8.   "Failure to meet the ninety-day deadline for service of a Tort Claims Act notice of claim ordinarily results in a severe penalty: '[t]he claimant shall be forever barred from recovering against [the] public entity.'"   *McDade v. Siazon*, 32 A.3d 1122, 1130 (N.J. 2011) (quoting N.J. Stat. Ann. § 59:8–8).   The plaintiff "bears the burden of proving that the claim was filed with the appropriate public entity."   *Rolax v. Whitman*, 175 F.

---

[24]    The MCPO Defendants argue that several of Plaintiffs' § 1983 and NJCRA claims should also be dismissed for failure to comply with the notice requirements of the NJTCA. (ECF No. 77-2 at 31-32.)   However, the NJTCA's notice requirements do not apply to claims brought under either statute.   *Michaels v. State of N.J.*, 955 F. Supp. 315, 326 (D.N.J. 1996) ("The New Jersey Tort Claims Act requirements do not apply to . . . § 1983 claim[s]"); *Owens v. Feigin*, 194 N.J. 947 A.2d 653, 654 (N.J. 2008) ("the [Tort Claims Act's] notice-of-claim requirement does not apply to [NJ]CRA causes of action.").

Supp. 2d 720, 730 (D.N.J. 2001), *aff'd*, 53 F. App'x 635 (3d Cir. 2002) (citing *Hammond v. City of Paterson*, 145 N.J. Super. 452, 455, 368 A.2d 373, 375 (App. Div. 1976))

Here, Plaintiffs have not attached a notice of claim to their pleadings, nor do they allege that they filed a claim notice.  Instead, Plaintiffs claim that they substantially complied with the NJTCA because "Defendants were well aware of Plaintiffs' claims through the extensive criminal proceedings spanning nearly EIGHT (8) Years."  (ECF No. 70 at 59.)[25]  The New Jersey Supreme Court has explained that, in the NJTCA context, "the doctrine of substantial compliance 'has been limited carefully to those situations in which the notice, *although both timely and in writing*, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute.'"  *H.C. Equities, LP v. Cnty. of Union*, 254 A.3d 659, 671 (N.J. 2021) (emphasis added). Plaintiffs concede that they never gave notice in writing, so they do not qualify for the narrow substantial compliance exception.  (*See* ECF No. 70 at 59.)  Count Twelve will be dismissed as to all Defendants with prejudice because further amendment would be futile.  *See Baldeo v. City of Paterson*, Civ. No. 18-5359, 2019 WL 277600, at *1 (D.N.J. Jan. 18, 2019) ("[T]he Complaint's tort claims are dismissed in their entirety, with prejudice, because the plaintiffs have failed to file a notice of tort claim under the New Jersey Tort Claims Act.").

### H.    Punitive Damages as to the Entity Defendants

Plaintiffs also seek punitive damages against all Defendants. (*See generally* ECF No. 1). However, pursuant to N.J. Stat. Ann. § 59:9-2(c), "no punitive . . . damages shall be awarded against a public entity."  Plaintiffs' claims for punitive damages cannot stand against any of the

---

[25]    Plaintiffs also claim that there has been a continuing violation because of the MCPO Defendants' ongoing seizure of Plaintiff Robert's car.  Even if that were the case, Plaintiffs have not met their burden to show that a notice of claim has been filed.  *See Rolax*, 175 F. Supp. 2d at 730.

public entity Defendants. *See Gardner v. New Jersey State Police*, Civ. No. 15-8982, 2017 WL 2955348, at *4 (D.N.J. Jul. 11, 2017) ("[P]unitive damages are not available against municipality entities under the NJTCA, NJCRA, and § 1983."). Plaintiffs' claims for punitive damages will therefore be dismissed with prejudice as to the State, the MCPO, the County, and the Hazlet Defendants.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motions (ECF Nos. 63, 64, 77) are **GRANTED**. The Court will enter judgment in favor of the MCPO Defendants with respect to Plaintiffs' claims for injunctive relief for the return of Robert's vehicle. Counts Twelve, Seventeen, and Plaintiffs' claims for punitive damages against the State, the County, the Hazlet Defendants, and the MCPO are **DISMISSED** with prejudice. All claims against the Hazlet Township Police Department are **DISMISSED** with prejudice. All remaining claims are **DISMISSED** without prejudice. Plaintiffs are granted thirty days to amend their Complaint to address the deficiencies outlined herein. An appropriate Order follows.

Dated: November 20, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE