**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT J. IANUALE and PHILIP J. IANUALE,<br><br>       Plaintiffs,<br><br> v.<br><br>STATE OF NEW JERSEY, *et al.*,<br><br>       Defendants. | Civil Action No. 18-03069 (GC) (JBD)<br><br>**OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon three separate motions to dismiss Plaintiffs Robert and Philip Ianuale's First Amended Complaint (FAC) (ECF No. 86): *first*, Defendant Monmouth County moved to dismiss pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6) (ECF No. 88); *second*, Defendants Hazlet Township and Officer William Marvel (the Hazlet Defendants) moved to dismiss pursuant to Rule 12(b)(6) (ECF No. 90); *third*, Defendants Monmouth County Prosecutor's Office (MCPO), Monmouth County Prosecutor Christopher J. Gramiccioni, Assistant Prosecutor Margaret Koping, and MCPO Detectives John Sosdian and Richard Bruccoliere (the MCPO Defendants) moved to dismiss under Rule 12(b)(6) (ECF No. 99). Plaintiffs opposed the Motions, and Monmouth County and the Hazlet Defendants replied. (ECF Nos. 91, 92, 93, 94, 100.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant Monmouth County's Motion (ECF No. 88) is **GRANTED**, the Hazlet Defendants' Motion (ECF No. 90) is **GRANTED in part**

and **DENIED in part**, and the MCPO Defendants' Motion (ECF No. 99) is **GRANTED in part** and **DENIED in part**.

I.  **BACKGROUND**[1]

  A.  **Factual Background**[2]

Plaintiffs' allegations stem from their arrest in March 2016, which occurred at their parents' home in Hazlet, NJ.  (ECF No. 86 ¶¶ 18, 25, 37, 52, 58.)  According to a statement issued by the MCPO following Plaintiffs' arrests, and attached as an exhibit to the FAC, an investigation by the MCPO and the Department of Homeland Security revealed that Robert engaged in the prostitution of juvenile females while broadcasting on the internet.  (ECF No. 86-2 at 8.[3])

  1.  *Search Warrants and Arrests*

Plaintiffs allege that on March 23, 2016, Defendant Sosdian, a detective with the MCPO, "provided false and misleading statements in warrant affidavits, with reckless disregard for the truth." (ECF No. 86 ¶ 19.)  Plaintiffs allege that in seeking a search warrant for Plaintiffs' residence related to alleged crimes committed by Robert, Detective Sosdian "disregarded readily available

---

[1]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

[2]    Based on the Court's review, many factual allegations that formed the basis of Plaintiff's initial Complaint have been omitted from the FAC.  "Generally, 'an amended pleading . . . supersedes the earlier pleading and renders the original pleading a nullity." *Dickerson v. N.J. Inst. of Tech.*, Civ. No. 19-8344, 2020 WL 7054156, at *7 (D.N.J. Dec. 2, 2020) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017); *see also Sexton v. N.J. Dep't of Corr.*, Civ. No. 21-20404, 2024 WL 4615763, at *4 n.9 (D.N.J. Oct. 30, 2024), *aff'd*, No. 24-3118, 2025 WL 1482788 (3d Cir. May 23, 2025) ("In the context of *pro se* litigants, 'liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings."" (quoting *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019))).  Accordingly, the Court only considers Plaintiffs' factual allegations in the FAC.

[3]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

exculpatory evidence of which he was aware." (*Id.* ¶ 20.) Specifically, Plaintiffs allege that Detective Sosdian "had in his possession alleged victim . . . testimony in the form of an interview, taken on October 30, 2015, which exonerated Plaintiff Robert Ianuale of any wrong-doing and in-fact implicated another individual of the alleged crimes, who was subsequently arrested on January 13, 2016." (*Id.* ¶ 20.)

Plaintiffs assert that on "[o]n or about March 28, 2016, Defendants Sosdian, and John Does 3-10 planned a ruse to enter the home of Plaintiffs, instead of properly executing a search warrant." (*Id.* ¶ 25.) Plaintiffs claim that Defendants violated their civil rights "by disregarding the warrant execution rules and bypassing the 'knock and announce' rule contained in the search warrant." (*Id.* ¶ 26.) In support, Plaintiffs cite a report about the execution of the search warrant at their home:

> The plan of execution of this search warrant operation was discussed and due to the fact of possible weapons and dogs (German Shepherds) on the property a ruse was formulated to gain entry once the knock and announce was completed.

[(*Id.* ¶ 27.)]

Upon Philip opening the door to his parents' home, Defendants Sosdian and Marvel (along with other unnamed officers) allegedly told Philip that there had been a "swatting call" and "reports of a man with a gun," but Defendants did not inform Philip that there was a search warrant for the property. (*Id.* ¶¶ 37, 38.) Philip responded by advising the officers that "since they stated it was a 'swatting call', they knew the alleged 'reports' to be false, that there wasn't anyone with a gun on the property, that they had no reason to be there, and should leave the property." (*Id.* ¶ 40.) According to the FAC, while Philip began to close the door, "Defendant Sosdian crossed the threshold of the property, pushed open the front door and violently grabbed Plaintiff Philip Ianuale by the waist, attempting to pull him out of the property." (*Id.* ¶ 42.) Plaintiffs claim that a report

3

filed by Detective Sosdian supports their contention that "prior to the announcement of a search warrant, Defendant Sosdian and Defendant Marvel were actively assaulting Plaintiff Philip Ianuale and crossed the threshold of Plaintiffs['] home." (*Id.* ¶ 34.) According to Plaintiffs, Detective Sosdian's report states in pertinent part that "I then approached and grabbed Philip Ianuale around the waist, to prevent him from entering the residence and locking us out. . . . At this time[,] Philip Ianuale was advised we were police executing a search warrant." (*Id.* ¶ 33.)

Philip was subsequently arrested and transported to the Hazlet Township Police Station for the duration of the execution of the search warrant at his parents' home. (*Id.* ¶ 46.) Plaintiffs assert that despite the fact that Philip "did not have any marijuana or drug paraphernalia on his person at the time of his arrest," and that he "was not a disorderly person, did not resist arrest or obstruct justice," Philip was "subsequently charged with Third Degree Resisting Arrest, Fourth Degree Obstruction, and Disorderly Persons for Possession of Marijuana and Possession of Drug Paraphernalia." (*Id.* ¶¶ 47, 48, 49.) After several hours in custody, Philip was released on his own recognizance. (*Id.* ¶ 50.) After seven years, all criminal charges against Philip were dismissed with prejudice. (*Id.* ¶ 51.)

Plaintiff Robert was also arrested at his parents' home. (*Id.* ¶ 52.) Robert asserts that "Defendant Sosdian did not advise Plaintiff Robert Ianuale [of] the reason for the arrest or that there had been a search warrant to search the home until after Plaintiff Robert Ianuale was arrested." (*Id.* ¶ 54.) After being brought to the "Monmouth County offices in Freehold," Robert was charged with First Degree Endangering the Welfare of a Minor, First Degree Promoting Prostitution of a Minor, First Degree Use of a Juvenile to Commit a Crime, Second Degree Distribution of Child Pornography, Third Degree Endangering Welfare of a Child, Third Degree Luring an Adult and Third Degree Financial Facilitation of a Crime. (*Id.* ¶ 56.)

4

Plaintiffs allege that Philip's arrest was captured on video, and that Defendants Sosdian, Marvel, Bruccoliere, and other unnamed officers "seized the video surveillance system, although such seizure was not included as part of the search warrant." (*Id.* ¶ 60.) Without citing specifics, Plaintiffs submit that Detective Sosdian "wrote false reports" about Philip's arrest, which are "contradicted by the videos from the seized video surveillance system." (*Id.* ¶ 61.)

In March 2017, Detective Joseph Spicuzza Jr., under the direction of Detective Sosdian, conducted a forensic examination of all electronic devices, phones, and hard drives that were seized at Plaintiffs' home. (*Id.* ¶ 73.) Detective Spicuzza's report concluded that "no suspected child pornography images or videos were found." (*Id.*) Plaintiffs claim that "computers, business and tax documents, thumb drives, and personal items" which were seized have yet to be returned, despite a state court judge ordering Defendants to return Plaintiffs' property. (*Id.* ¶ 83.)

### 2.    *Press Releases and Indictments*

Shortly after Plaintiffs' arrests, Monmouth County Prosecutor Gramiccioni issued a press release which Plaintiffs aver was "knowingly false," made with "reckless disregard to the truth," and was "intended to harm Plaintiffs and deny Plaintiffs due process, by convicting them of being guilty in the 'court of public opinion.'" (*Id.* ¶ 68.) The release bore the headline, "'Fistpump' Charged with Prostitution of Underage Girls" and stated that Robert, who uses the online persona "Fistpump," was "the owner/operator of the online live broadcasting service known as SwerveCast," and was arrested for "the prostitution of juvenile females and on at least one occasion tried to lure online viewers to sexually assault a woman and broadcast the assault live over the internet." (ECF No. 86-2 at 8.) After detailing the charges against Plaintiffs, the press release included a disclaimer that "[d]espite these charges, every defendant is presumed innocent unless and until found guilty beyond a reasonable doubt following a trial at which the defendant has all of the trial rights guaranteed by the U.S. Constitution and State law." (*Id.* at 9.) The day after the

press release, Robert was arraigned, and cash-only bail was set at $450,000.  (ECF No. 86 ¶ 69.)

Plaintiffs submit that Robert's bail conditions were "influenced by Defendants' highly publicized false statements about [Robert]."  (*Id.*)

At the time of their arrests, Plaintiffs were each "self-employed in several business ventures."  (*Id.* ¶¶ 16, 17.)  In the FAC, Plaintiffs specify only that Robert was self-employed at "Resorb Networks Inc." and that Philip was self-employed at "Visons of Pure Tranquility Corp." (*Id.*)  Plaintiffs also claim that the press release negatively affected their business ventures.  For example, Philip claims he "attempted to make contact with an established client, and the established client refused to take his call, eventually citing that they were ending their business relationship due to the recent press."  (*Id.* ¶ 70.)  Additionally, Philip claims that upon giving a potential client a business card, Philip overheard the potential client say "that's the guy who has been in the news recently with his brother."  (*Id.* ¶ 71.)  Plaintiffs also claim that "[a]s a result of the Defendants' defamatory statements, over the course of the following months, several long-term business clients of Plaintiff Philip Ianuale ended their business relationships."  (*Id.* ¶ 72.)

Plaintiffs were indicted in July 2017, sixteen months after their arrest.  (*Id.* ¶ 75.)  Following the indictment, the MCPO and Prosecutor Gramiccioni issued another press release, this one with the headline: "'Fistpump' Indicted for Prostitution of Underage Girls."  (*Id.* ¶ 76; ECF No. 86-2 at 13.)  As with the press release about their arrest, the announcement of the indictment made clear that Plaintiffs were presumed innocent of the charges against them.  (ECF No. 86-2 at 14.)

Robert ultimately pled guilty to Luring/Enticing an Adult (N.J. Stat. Ann. § 2C:13-7A) and Money Laundering (N.J. Stat. Ann. § 2C:21-25A) in what the FAC characterizes as a "coercive plea agreement."  (ECF No. 86 ¶ 86.)  Robert alleges that Assistant Prosecutor Koping provided false statements in connection with the preparation of his Adult Presentence Report, including by

submitting that Robert "created his own live streaming service, where he allowed minors to engage in sexually explicit conduct from which he profited." (*Id.* ¶ 77.) On March 31, 2023, Robert was sentenced to three years in New Jersey State Prison. Robert alleges that Koping's "defamatory statements" in the Presentence Report served as a basis for the judge's sentence. (*Id.* ¶ 79.) The same day that Robert was sentenced, all charges against Philip were dismissed with prejudice. (*Id.* ¶ 51.)

### B.    Procedural Background

The relevant procedural background is set forth in more detail in the Court's prior Opinion dismissing Plaintiffs' initial Complaint. *See Ianuale v. State of New Jersey*, Civ. No. 18-03069, 2024 WL 4856206 (D.N.J. Nov. 20, 2024). Plaintiffs' initial Complaint consisted of twenty-six counts. All Defendants moved to dismiss, and on November 20, 2024, the Court dismissed all of Plaintiffs' claims. *See id.* However, the Court afforded Plaintiffs the opportunity to file an amended complaint to address the deficiencies identified by the Court.[4] Plaintiffs thereafter filed the FAC.

The FAC includes ten causes of action, all of which Plaintiffs bring under 42 U.S.C. § 1983: Wrongful Arrest of Plaintiff Robert (against Detective Sosdian in his individual capacity) (Count One); Wrongful Arrest of Plaintiff Philip (Count Two); Excessive Force (Count Three); Unlawful Seizure (Against Detective Sosdian in his individual capacity) (Count Four); Unlawful Policy, Custom, Practice, and Inadequate Training (Count Five); Supervisory Liability for Failure to Train

---

[4]    Plaintiffs' claims under the New Jersey Tort Claims Act, claims for negligence under § 1983, claims for punitive damages, and claims against the Hazlet Township Police Department were dismissed with prejudice. The Court also granted summary judgment to the MCPO Defendants on Robert's claim for injunctive relief for the return of his vehicle, finding the claim was moot. The Court dismissed the remainder of Plaintiffs' claims without prejudice. *Ianuale*, 2024 WL 4856206, at *20.

(Count Six); Defamation (Stigma Plus) (Count Seven); Due Process (Count Eight); Due Process (Against Defendant Koping in her individual capacity) (Count Nine); and Unlawful Seizure (Count Ten).[5]

## II.    __LEGAL STANDARD__

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605

---

[5]    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

F.3d 223, 230 (3d Cir. 2010).  A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.  <u>DISCUSSION</u>

### A.     **Persons Not Amenable to Suit Under § 1983**

As courts in this district have recognized, § 1983 provides its own bar to bringing actions against states and state actors, *i.e.*, "who or what is a suable 'person' under [§] 1983."  *See Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019) (recognizing that the suable person analysis is a separate analysis from Eleventh Amendment sovereign immunity).

42 U.S.C. § 1983 states in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To obtain relief under § 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The MCPO and the MCPO Defendants, sued in their official capacities, argue that all claims against them must be dismissed because they are not "persons" amenable to suit under § 1983.  (ECF No. 99-1 at 23.)  The Court

previously granted the MCPO Defendants' Motion to Dismiss on the same basis. *See Ianuale*, 2024 WL 4856206, at *9.

In opposition, Plaintiffs argue that their claims are actionable against the MCPO and the MCPO Defendants in their official capacities under *Monell*.[6] However, "*Monell* liability only attaches to local governments, and does not attach to the State or its agencies." *Carbonaro v. Glassboro Police Dep't*, Civ. No. 22-00617, 2023 WL 2784386, at *6 (D.N.J. Apr. 5, 2023) ("Because we have determined that the [Gloucester County] Prosecutor [d]efendants are an arm of the state pursuant to the Eleventh Amendment, Plaintiffs could not assert a *Monell* claim against them.").

Accordingly, for the same reasons as outlined in the Court's prior opinion, *see Ianuale*, 2024 WL 4856206, at *9, all claims against the MCPO and the individual MCPO Defendants in their official capacities are dismissed without prejudice. The Court next turns to claims brought against the MCPO Defendants in their individual capacities.

### B.    Absolute Prosecutorial Immunity

When sued in their individual capacity, prosecutors enjoy immunity from liability for acts they take during their role as a prosecutor. *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976) ("[A] prosecutor enjoys absolute immunity from [§] 1983 suits for damages when he acts within the scope of his prosecutorial duties."); *LeBlanc v. Stedman*, 483 F. App'x 666, 669 (3d Cir. 2012) (same). To hold otherwise would diminish the public's trust of a prosecutor's office if he or she "were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Imbler*, 424 U.S. at 424-25.

---

[6]     *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

"[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). This immunity includes, but is not limited to, acts such as collecting evidence, evaluating the collected evidence, and failing to conduct an adequate investigation before filing charges. *Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (citing cases). "This immunity extends to investigators employed by a prosecutor's office if the investigator performs investigative work in connection with a criminal prosecution. *Langford v. Gloucester Twp. Police Dep't*, Civ. No. 16-1023, 2016 WL 7130912, at *3 (D.N.J. Dec. 7, 2016).

However, a prosecutor's actions "are not absolutely immune merely because they are performed by a prosecutor." *Buckley*, 509 U.S. at 273. While immunity attaches to actions "intimately associated with the judicial phases of litigation," it does not attach to "administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). The determination of whether a prosecutor is acting as an advocate or in an administrative/investigatory function is a fact-specific inquiry. *See id.* at 210 (noting that while "it is tempting to derive bright-line rules . . . the Supreme Court has cautioned against such categorical reasoning") (citing *Imbler*, 424 U.S. at 431). However, courts have found, for example, that prosecutors are not entitled to absolute immunity when holding press conferences, *Buckley*, 509 U.S. at 276-78, fabricating evidence during a preliminary investigation, *id.*, or deliberately destroying exculpatory evidence. *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006).

The MCPO Defendants assert that they are "entitled to absolute prosecutorial immunity for their decision to initiate the criminal investigation and proceedings against Plaintiffs, which

resulted in this lawsuit, because they acted, at all relevant times, as the State's advocate." (ECF No. 99-1 at 27.) More specifically, the MCPO Defendants assert that the following actions are shielded by absolute immunity: (1) "Detective Sosdian investigat[ing] Plaintiffs and then execut[ing] search and arrest warrants against them; (2) Prosecutor Gramiccioni and Assistant Prosecutor Koping's decision to initiate the criminal prosecution against Plaintiffs; (3) Detective Sosdian disregarding readily available exculpatory evidence in the form of a witness interview in seeking a search warrant." (*Id.* at 28-29.)

The Court agrees that the MCPO Defendants are shielded by absolute prosecutorial immunity for certain of the alleged acts outlined in the FAC. The decisions to initiate and prosecute the criminal cases against Plaintiffs are shielded by absolute prosecutorial immunity. *See Lopez v. CSX Transp. Ry Police Dep't*, Civ. No. 06-1802, 2006 WL 2604823, at *2 (D.N.J. Sept. 11, 2006) ("The rule in the Third Circuit is that '[p]rosecutors enjoy absolute immunity for the decision to initiate a prosecution or dismiss charges' and for other conduct related to initiation and presentation of the state's case." (quoting *Jerrytone v. Musto*, 167 F. App'x 295, 300 (3d Cir. 2006))); *Brunson v. State of New Jersey*, Civ. No. 17-04577, 2018 WL 3388303, at *5 (D.N.J. July 12, 2018) ("So long as the alleged actions themselves are functionally related to prosecution, the Supreme Court's jurisprudence immunizes even gross prosecutorial misconduct."). And to the extent Plaintiffs base their claims on the preparation of Robert's Presentence Report, (ECF No. 86 ¶¶ 219-232), those acts are also covered under absolute prosecutorial immunity. *See Stankowski v. Farley*, 487 F. Supp. 2d 543, 553 (M.D. Pa. 2007) ("[P]resentence reports are thus 'integral parts of the judicial process' and those who prepare them are 'immune from suits under Section 1983.'" (quoting *McArdle v. Tronetti*, 961 F.2d 1083, 1084 (3d Cir. 1992))).

However, the Court previously held that two categories of Plaintiffs' claims fall outside of the scope of the individual MCPO Defendants' absolute prosecutorial immunity: (1) claims relating to Detective Sosdian "submitt[ing] false affidavits in support of Plaintiffs' arrests"; and (2) claims related to the MCPO Defendants issuing press releases about Plaintiffs' charges and indictment. *Ianuale*, 2024 WL 4856206, at *12. Here, for the same reasons as expressed in the Court's prior Opinion, these categories of claims fall outside of the scope of absolute prosecutorial immunity. *Id.* Plaintiffs' claims related to their seized property (Counts Four and Ten) also fall outside of the scope of the MCPO Defendants' absolute immunity. *See Ford v. Cassella*, Civ. No. 10-3711, 2011 WL 3203285, at *3 (D.N.J. July 27, 2011) ("[T]he United States Court of Appeals for the Third Circuit has held that prosecutors who improperly withhold property confiscated from criminal defendants are not entitled to absolute immunity because the management of seized property is an administrative function not directly related to the prosecutorial function." (collecting cases)).

Accordingly, the Court will dismiss Plaintiffs' due process claim against Defendant Koping (Count 9), as that claim is based solely on Assistant Prosecutor Koping's assistance with the preparation of Robert's Presentence Report. To the extent Plaintiffs' claims are not shielded by absolute prosecutorial immunity, the Court addresses those claims below.

### C.    Defamation and Due Process Claims Based on Press Releases

Plaintiffs seek to hold Prosecutor Gramiccioni and Assistant Prosecutor Koping liable for issuing defamatory press statements about Plaintiffs' arrest and indictment. The Court previously rejected Plaintiffs' claims based on Defendants' press releases on two grounds. First, the Court held that, although they were not entitled to absolute immunity, Prosecutor Gramiccioni and Assistant Prosecutor Koping were entitled to qualified immunity for issuing the press releases because Plaintiffs had not alleged that the issuance of the press releases violated a clearly

13

established right.  *See Ianuale*, 2024 WL 4856206, at *12 ("There is no federal constitutional right to reputation . . . and violations of state law, including defamation, are insufficient to state a claim under § 1983." (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3d Cir. 1992))).  Second, the Court found that even if Prosecutor Gramiccioni and Assistant Prosecutor Koping were not entitled to qualified immunity, Plaintiffs had not plausibly pled a "stigma-plus" defamation claim.  *See id.* at *13.

"To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006).  "To establish stigma, the relevant statements must be both made publicly and false."  *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 858 (D. Del. 2016) (citing *Hill*, 455 F.3d at 236)).  "The second or plus requirement pertains to the additional deprivation needed to transform a stigmatizing statement into a § 1983 action."  *Id.* (citing *Hill*, 455 F.3d at 236).  Courts have referred to this as the "stigma-plus" test. *Id.*  Thus, "defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution."  *Clark*, 890 F.2d at 619.

In dismissing Plaintiffs' claims related to the MCPO Defendants' press releases, the Court noted that Plaintiffs' vague references to loss of "property" and "employment" were insufficient to state a stigma-plus claim.  *Ianuale*, 2024 WL 4856206, at *13.  In the FAC, Plaintiffs allege that they "were terminated by several established clients after the press-release" and that prospective clients refused to do business with them.  (ECF No. 86 ¶¶ 70, 192.)  The MCPO Defendants assert that Plaintiffs still fail to plead a plausible stigma-plus claim, and further argue that the press releases were either truthful or non-actionable expressions of opinion.  (ECF No. 99-1 at 42.)

14

Further, the MCPO Defendants argue that Plaintiffs' references to losing clients because of the press releases are too conclusory to sustain their stigma-plus claim. (*Id.* at 43.) Plaintiffs argue in response that the press releases were not entirely truthful, as Plaintiffs were not convicted of all the crimes they were charged with (and which were referenced in the press releases). (ECF No. 100 at 14.) Plaintiffs also contend that, because Defendants seized Plaintiffs' business records, additional discovery is needed for them to plead more specific factual allegations regarding their loss of clients. (*Id.* at 22-23.)

Without having to reach the issue of whether the press releases were truthful, the Court concludes Plaintiffs' defamation and due process claims fail because they have not plausibly alleged the "plus" prong of the stigma-plus test. Plaintiffs' allegations of harm all relate to the loss of business they suffered. But the Third Circuit has "held that financial harm resulting from the loss of clients 'is insufficient to transform a reputation interest into a liberty interest.'" *Clark v. Twp. of Falls*, 890 F.2d 611, 619-20 (3d Cir. 1989) (citation omitted); *see also Randall v. Facebook, Inc.*, 718 F. App'x 99, 101 (3d Cir. 2017) ("[The plaintiff] asserted that the press release defamed him and limited his prospects for employment as a musician. [The plaintiff's] claim is foreclosed by the Supreme Court's decision in *Paul v. Davis*[, 424 U.S. 693 (1976)]. There, the Court stated that a claim of defamation (by a police department that circulated a flyer imputing criminal behavior to a person) was not a federal claim even if it would 'seriously impair [that person's] future employment opportunities.'"); *Sibiski v. Cuomo*, Civ. No. 08-3376, 2010 WL 3984706, at *8 (E.D.N.Y. Sept. 15, 2010) ("Even assuming, *arguendo*, that [the d]efendant's press release detailing the charges against [the p]laintiffs constituted defamation, [the p]laintiffs have failed to allege a state-imposed burden necessary for invoking the 'stigma plus' doctrine."); *see also Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (Sotomayor, J.) ("Burdens that can satisfy

15

the 'plus' prong under this doctrine include the deprivation of a plaintiff's property . . . and the termination of a plaintiff's *government* employment.") (emphasis added); *Velez v. Levy*, 401 F.3d 75, 88 (2d Cir. 2005) ("In a typical 'stigma-plus' case, the stigmatizing statement originates from the same state actor who imposes the 'plus,' such as when a *government* employer defames an employee in the course of terminating that employee.") (emphasis added); *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 270 (S.D.N.Y. 2006) (finding that the plaintiff's firing from public employment was "unquestionably a 'plus'—a tangible and material state-imposed burden") (citation modified).

Relying on the Third Circuit's decision in *Clark v. Township of Falls*, Plaintiffs assert that "courts in this Circuit have recognized that defamation resulting in lost employment, clients, or professional opportunities may establish a stigma-plus claim." (ECF No. 100 at 17.) In *Clark*, the court found that a police lieutenant who had been stripped of certain duties, while retaining his rank, did not show that he had a liberty interest in his reputation to succeed on a defamation claim. 890 F.2d at 620. The court reasoned that the plaintiff failed to show that the defendants' "defamatory remarks and actions were conjoined with the alteration or extinguishment of any interest created or protected by the Constitution or state law" because plaintiff "had no property interest under state law in retaining the duties and privileges he had previously enjoyed as a lieutenant." *Clark*, 890 F.2d at 620. The plaintiff also argued that "his future job prospects were significantly affected by defendants' continued investigations of him, disparaging allegations, and innuendos," which he claimed demonstrated "that something more than merely his reputation was adversely affected." *Id.* But the court likewise rejected this argument, holding that "[t]he possible loss of future employment opportunities is patently insufficient to satisfy the requirement . . . that a liberty interest requires more than mere injury to reputation." *Id.*; *see also Sturm v. Clark*, 835

F.2d 1009, 1013 (3d Cir. 1987) (holding that financial harm resulting from the loss of clients was "insufficient to transform a reputation interest into a liberty interest").  At bottom, Plaintiffs cite no case in which a court has upheld a stigma-plus claim on facts like those present here.

Accordingly, Plaintiffs' claims against the MCPO Defendants based on the issuance of press releases about their charges and indictments (Counts Seven and Eight) will be dismissed without prejudice.

### D.    Excessive Force Claim

Plaintiffs allege that Defendants Sosdian, Marvel, and Bruccoliere used excessive force in arresting Philip.  "The right to be free from the use of excessive force has been recognized under the Fourth Amendment, which guarantees the right of citizens 'to be secure in their persons . . . against unreasonable . . . seizures.'"  *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  "To state a claim for excessive force under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable."  *Middleton v. City of Ocean City*, Civ. No. 12-0605, 2014 WL 2931046, at *10 (D.N.J. June 30, 2014) (citing *Curley v. Klem*, 499 F.3d 199, 203 (3d Cir. 2007)).

The question to be answered when excessive force is alleged "is whether, under the totality of the circumstances, an officer's actions are objectively reasonable in light of facts and circumstances confronting him, without regard to his underlying intent or motivations."  *Id.* (citation omitted).  This question is analyzed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*  And courts "make 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"  *Anglemeyer*, 92 F.4th at 188 (quoting *Graham*, 490 U.S. at 397).

17

Factors considered when assessing an officer's reasonableness are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 188-89 (quoting *Graham*, 490 U.S. at 396). Courts "also consider 'the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *Id.* at 189 (quoting *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020)).

Plaintiffs assert that "Defendants Sosdian and Marvel immediately and violently grabbed Plaintiff Philip Ianuale around his waist and dragged him out-side, from within the house and [] placed [him] under arrest." (ECF No. 86 ¶ 31.) The MCPO Defendants contend that the force used to arrest Philip was "minimal." (ECF No. 99-1 at 47.) Moreover, the MCPO Defendants point out that, because they had a search warrant, it was reasonable to detain Philip. (*See* ECF No. 99-1 at 35.) Officer Marvel asserts that the FAC does not plausibly allege that he used any force whatsoever. (ECF No. 90-4 at 12.) In opposition, Plaintiffs contend that "[t]he officers' decision to use sudden, violent physical force on a person merely responding to a door knock is not the type of conduct that qualified officers would reasonably believe [to be] lawful." (ECF No. 100 at 12.)

There is no dispute that Philip was arrested. (*See* ECF No. 99-1 at 34.) Thus, the issue is whether the Complaint plausibly alleges that Defendants used excessive force in arresting Philip. At this preliminary stage, the Court finds that Philip's excessive force claim may proceed. "The question of whether the force used by a police officer was reasonable is generally a question for the jury." *Gravely v. Speranza*, 408 F. Supp. 2d 185, 190 (D.N.J. 2006), *aff'd*, 219 F. App'x 213

(3d Cir. 2007); *see also Pappas v. Zacamy*, Civ. No. 10-3327, 2011 WL 4528042, at *3 (D.N.J. Sept. 28, 2011) ("[W]hether or not the actions of the officers were 'reasonable' in order to justify the force used, or warrant qualified immunity, cannot be determined from the complaint.")

Here, it is not clear from the face of Plaintiffs' Complaint that the force used by Defendants in arresting Philip (*i.e.*, "violently" grabbing him by the waist and dragging him outside of his home) was objectively reasonable in light of Philip's allegations that he did not resist arrest or pose a threat to the officers. (ECF No. 86 ¶¶ 31, 42.) *See Daniels v. City of Phil.*, Civ. No. 16-4270, 2017 WL 25382, at *4 (E.D. Pa. Jan. 3, 2017) (denying motion to dismiss excessive force claim where the plaintiff alleged that "despite posing no threat to the officers, he was pushed on multiple occasions despite complying with all directives," and concluding that while "ultimately the force employed against [the plaintiff] may be deemed *de minimis*, the factual allegations in the [c]omplaint entitle [the plaintiff] to discovery on his excessive force claim").

Indeed, courts have generally declined to resolve excessive force claims at the pleading stage. *Williams v. Papi*, 30 F. Supp. 3d 306, 312 (M.D. Pa. 2014) ("[I]t is surely premature to expect the [c]ourt to make [an excessive use of force determination] at the motion to dismiss stage, when the only issue before it is to determine whether Plaintiffs Complaint alleges facts that 'plausibly give rise to an entitlement for relief.'"); *Brown v. Butler*, Civ. No. 17-30030, 2018 WL 1326391, at *2 (D. Mass. Mar. 15, 2018) ("The question of reasonableness in the use of force can rarely be resolved on a motion to dismiss."); *Borowski v. Mordino*, Civ. No. 16-999, 2017 WL 9517688, at *5 (W.D.N.Y. July 21, 2017), *report and recommendation adopted*, Civ. No. 16-999, 2017 WL 4683980 (W.D.N.Y. Oct. 19, 2017) ("[C]ourts are rarely able to assess the reasonableness of the force used at the motion to dismiss stage[,] [and] a motion to dismiss may be granted in an excessive force case only if, after accepting all allegations as true, the force used was objectively

reasonable as a matter of law."); *Richardson v. Reno Police Dep't*, Civ. No. 17-00383, 2018 WL 3785387, at *4 (D. Nev. Aug. 9, 2018) ("The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment, let alone dismissal under Rule 12(b)(6)."); *Morton v. Town of Wagram*, Civ. No. 00-00462, 2001 WL 68232, at *2 (M.D.N.C. Jan. 19, 2001) ("Motions to dismiss claims of excessive force, as opposed to summary judgment motions, are granted only rarely—typically, where the claim is conclusory and without factual support or where the use of force was clearly warranted.") (citation modified).

Given the factual issues presented, the Court at this early stage also declines to find that Defendants are shielded by qualified immunity on Philip's excessive force claim. [7]   *See Walker v. City of Newark*, Civ. No. 19-16853, 2020 WL 3542502, at *9 (D.N.J. June 30, 2020), *as amended* (July 1, 2020) ("At the motion to dismiss stage, . . . the allegations do not entitle the [d]efendants to qualified immunity. . . .  [The p]laintiff has overcome the minimal pleading hurdle of alleging that his constitutional rights have been violated at least in so far as the officers are alleged to have used excessive force.  In 2018, when this incident occurred, the right to be free from excessive force was clearly established[.]").

Accordingly, the MCPO and Hazlet Defendants' Motions to Dismiss Plaintiffs' excessive force claim (Count Three) are denied.[8]

---

[7]    The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Schneyder v. Smith*, 653 F.3d 313, 331 (3d Cir.2011) (internal quotations and citations omitted).

[8]    Plaintiffs also base their excessive force claim on an alleged violation of the "knock and announce" rule.  Specifically, Plaintiffs allege that "Defendants Sosdian, Marvel, [and] Bruccoliere failed to properly announce their presence and purpose, and failed to wait a reasonable amount of time before making entry" into Plaintiffs' home.  (ECF No. 86 ¶ 131.)  "Under the

### E.    Wrongful Arrest Claims

Both Robert and Philip bring claims for wrongful arrest under § 1983. [9]  To bring a claim for wrongful or false arrest, a plaintiff must establish "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).[10]  The Fourth Amendment prohibits police from making an arrest except "upon

---

'knock and announce' rule, 'police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry.'" *Walker v. City of Wilmington*, 360 F. App'x 305, 313 (3d Cir. 2010) (quoting *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997).  "It is well established in the Third Circuit that a failure to knock and announce in serving an ordinary warrant, absent certain exigent circumstances, works a deprivation of the Fourth Amendment rights of the residents, then present, of the dwelling entered." *Hammond v. Acerno*, Civ. No. 21-3688, 2021 WL 5176299, at *4 (E.D. Pa. Nov. 4, 2021).  However, it is clear from the allegations in the FAC, particularly the allegation that Philip "open[ed] the front door" for Defendants, that Plaintiffs' excessive force claim cannot succeed on that basis.  Even accepting as true that Defendants did not announce their purpose for being at Plaintiffs' home (*e.g.*, to execute a search warrant), Plaintiffs do not allege that Defendants made a forcible entry into the home.  *See Love v. Johnson*, Civ. No. 07-1045, 2008 WL 2705479, at *5 (D.N.J. July 10, 2008) ("The [c]ourt finds that there was no forcible entry, as [the p]laintiffs' own certification states that [one of the plaintiffs] opened the door.  Thus, the Court will dismiss [the p]laintiffs' claim that [the d]efendants failed to knock and announce in violation of the Fourth Amendment."); *United States v. Alexander*, Crim. No. 18-00202, 2018 WL 4102249, at *4 (W.D.N.C. Aug. 28, 2018) ("Missing from [the] defendant's understanding of the knock and announce requirement is that it only comes into play where officers gain entry to a residence by *force*[.]") (citing *Richards*, 520 U.S. at 385) (emphasis in *Alexander*).

[9]    Although Plaintiffs detail alleged improprieties with the issuance and execution of the search warrants on their residence, the Court notes that Plaintiffs plead only unlawful *arrest*—not unlawful *search*—claims.  (*See generally* ECF No. 86.)  *See Covington v. Plymouth Twp. Police Dep't*, Civ. No. 24-1571, 2025 WL 1160068, at *6 (E.D. Pa. Apr. 18, 2025) ("Although similar, the elements of a false arrest/imprisonment claim are different from those in an unlawful search and seizure claim.").

[10]    The Court notes that in Plaintiffs' brief in opposition to the MCPO Defendants' Motion to Dismiss, Plaintiffs submit that they adequately pled a claim for malicious prosecution.  (ECF No. 100 at 6.)  Although Plaintiffs brought both wrongful arrest and malicious prosecution claims in their initial Complaint, (*see* ECF No. 1 ¶¶ 115-142), Plaintiffs dropped their malicious prosecution claims when they filed the FAC, (*see generally* ECF No. 86).  It is well settled that "a complaint cannot be amended (or supplemented) by way of an opposition brief." *Wang v. Zhang*, Civ. No. 19-21344, 2020 WL 9347655, at *3 (D.N.J. Aug. 12, 2020) (citing *Pennsylvania ex rel v. Zimmerman v. PepsiCo*, 836 F.2d 173 (3d Cir.1988)).  Thus, the Court only considers whether Plaintiffs have stated a claim for wrongful or false arrest. *See Johnson v. Knorr*, 477 F.3d 75, 82

probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). Put another way, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

The MCPO Defendants argue that Plaintiffs' wrongful arrest claims fail because Plaintiffs were indicted by a grand jury, which constitutes "prima facie evidence of probable cause to prosecute." However, the FAC makes clear that Plaintiffs were arrested prior to their indictment, so the Court declines to dismiss Plaintiffs' claims on that basis. (ECF No. 86 ¶¶ 37, 52, 75.) *See Goodwin v. Conway*, 836 F.3d 321, 329 (3d Cir. 2016) ("[The d]efendants argue that [the plaintiff's] grand jury indictment creates a rebuttable presumption of probable cause for all of his claims. But [the plaintiff's] arrest occurred before the indictment, pursuant to an arrest warrant. The presumption attaches only to the indictment and beyond, and thus has no bearing on an arrest that precedes the indictment.").

### 1.    *Philip*

Philip alleges that upon opening the door of his residence, officers from the MCPO and Hazlet Township Police Department violently grabbed him, arrested him, and charged him with obstruction of justice, resisting arrest, possession of marijuana and possession of drug

---

(3d Cir. 2007) ("Malicious prosecution differs from false arrest inasmuch as '[a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more.'"); *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) ("[L]iberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings.").

paraphernalia.  (ECF No. 86 ¶¶ 109-123.)  According to the FAC, Philip "did not have any marijuana or drug paraphernalia on his person at the time of his arrest," "was not a disorderly person," and "did not resist arrest or obstruct justice, as video surveillance showed."  (*Id.* ¶¶ 47-48.)  Rather, the FAC outlines that Philip, who was unaware that the officers possessed a search warrant, began closing the door on the officers.  (*Id.* ¶ 41.)  Philip also alleges that Defendants did not have a warrant for his arrest, and the charges against him were eventually dismissed.  (*Id.* ¶¶ 39, 51.)

Based on these facts, the Court will allow Philip's claim for unlawful arrest to proceed. Accepting as true that Philip did not act in a disorderly manner or possess drugs/drug paraphernalia, Philp has plausibly alleged that Defendants lacked probable cause to arrest him. *See Mesadieu v. City of Elizabeth*, Civ. No. 17-3252, 2017 WL 3923292, at *5 (D.N.J. Sept. 7, 2017) ("[The p]laintiff alleges he did not have any drugs on his person and that the narcotics for which he was charged were not his.  Taking that as true, the officers did not have probable cause to arrest [the p]laintiff. . . ."); *Orr v. Waterbury Police Dep't*, Civ. No. 17-788, 2018 WL 780218, at *5 (D. Conn. Feb. 8, 2018) ("[The plaintiff] alleges that he was falsely arrested for possessing narcotics because he did not have narcotics on his person and he knew nothing about the narcotics in the apartment. . . .  His allegations state a plausible claim for relief that is not malicious or frivolous; this claim is best resolved at the summary judgment stage."); *Valderrama v. Rousseau*, Civ. No. 11-24637, 2012 WL 12925174, at *5 (S.D. Fla. Sept. 18, 2012) (allowing false arrest claim to proceed where the plaintiff alleged that he was arrested for possessing drugs that he did not actually possess).  And to the extent Officer Marvel of the Hazlet Township Police Department argues that he was acting with probable cause based on reports of a "man with a gun," (ECF No. 90 at 10), this argument fails because the FAC alleges this was part of a "ruse" to enter

Plaintiff's home.   (*See* ECF No. 86 ¶¶ 25-27.)  Defendant's argument is more appropriately suited for summary judgment.

Accordingly, Philip's wrongful arrest claim (Count Two) may proceed.

### 2.    *Robert*

Based on the FAC, the circumstances of Robert's arrest, and whether he was arrested pursuant to an arrest warrant, are unclear.  (Compare ECF No. 86 ¶¶ 93-94 ("Defendant John Sosdian, in the warrant affidavits, knowingly made false statements, or omissions that created a falsehood, either deliberately, or with a reckless disregard for the truth. . . .  Those false statements or omissions were material, or necessary, to the finding of probable cause to arrest Plaintiff Robert Ianuale.") *with* ¶ 103 ("The aforementioned acts of Defendants in arresting Plaintiff Robert Ianuale was undertaken without legal or factual justification, without probable cause or any other exception to warrant requirement under the Fourth and Fourteenth Amendments of the Constitution of the United States and no reasonably competent police officer would have arrested Plaintiff.")  Regardless, Robert's claim for wrongful arrest must be dismissed because he does not state a plausible claim for relief as currently pled.

To the extent Robert was arrested pursuant to a warrant, he must allege "that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant'" and that "such statements or omissions [were] material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir.1997)).  In the Court's prior Opinion, it found that Plaintiffs failed to overcome this burden. *See Ianuale*, 2024 WL 4856206, at *15.  Here, the FAC is deficient for the reasons already outlined by the Court.  *See id.* (holding that "Plaintiffs have not adequately alleged that Detective Sosdian had 'obvious reasons to doubt' the information set forth in his affidavit to defeat qualified

immunity" and rejecting the theory that Detective Sosdian acted with reckless disregard for the truth in asserting that Robert was the owner/operator of SwerveCast). And the FAC's conclusory allegations about the lack of probable cause will not suffice. (*See, e.g.*, ECF No. 86 ¶ 95 ("On or about March 28, 2016, Defendants Sosdian effectuated arrest complaints falsely accusing Plaintiff Robert Ianuale with committing crimes to which Defendant Sosdian knew to be factually false."). Such "[v]ague and conclusory allegations of false arrest are insufficient to state a plausible claim for relief." *Medina v. Aprile*, Civ. No. 23-1057, 2023 WL 3440236, at *6 (E.D. Pa. May 12, 2023), *aff'd sub nom. Medina v. Allentown Police Dep't*, Civ. No. 23-2055, 2023 WL 7381461 (3d Cir. Nov. 8, 2023).

More specifically, Robert alleges that Detective Sosdian "disregarded readily available exculpatory evidence of which he was aware," in the form of a witness interview he conducted, which "exonerated Plaintiff Robert Ianuale of the crimes alleged by Defendant Sosdian and in-fact implicated another individual." (*Id.* ¶ 91.) The FAC includes a portion of an interview exchange in which a third party is mentioned. (*Id.* ¶ 20.)

However, the FAC does not provide any factual details regarding how this interview exculpated Robert. Nor do Plaintiffs provide the remainder of the interview or affidavit for the Court to infer there was a lack of probable cause. *See Gentles v. Borough of Pottstown*, Civ. No. 20-2738, 2023 WL 4993198, at *2 (3d Cir. Aug. 4, 2023) ("While [the plaintiff] asserted that [the police officer] had an affidavit of probable cause, [the plaintiff] does not discuss the contents of that affidavit. He is clearly aware of that content as he alleged that the facts asserted in the sworn affidavit of probable cause (assault and threats) were contradicted by his testimony at a hearing. . . . Given this background, [the plaintiff's] bare, conclusory allegations are not sufficient to allege a lack of probable cause. . . .") (internal quotation marks omitted); *Guzman v. City of Newark*, Civ.

No. 20-6276, 2022 WL 1044957, at *6 (D.N.J. Apr. 7, 2022) ("Without specific information about the contents of the affidavit underlying Plaintiff's arrest warrant, including which statements or omissions within the affidavit are allegedly false, the Court cannot determine whether there was probable cause to support the arrest warrant."); *Elliot v. Ortiz*, Civ. No. 21-0291, 2024 WL 2957034, at *6 (D.V.I. June 12, 2024) ("Conclusory allegations of false statements made in the pursuit of a warrant are insufficient to plead a § 1983 claim for false arrest."); *see also Severino v. Middlesex Cnty. Prosecutor's Off.*, Civ. No. 19-19164, 2022 WL 1269698, at *3 (D.N.J. Apr. 28, 2022) ("In analyzing whether there was probable cause to issue an arrest warrant based on a police officer's sworn statement, a district court must identify the improperly asserted or omitted facts and, if it determines that there were reckless misrepresentations or omissions, excise those portions of the affidavit and assess whether the remaining contents of the affidavit would establish probable cause to issue an arrest warrant.").

Finally, to the extent Robert claims that his arrest was not effectuated pursuant to a warrant, he provides insufficient factual detail for his claim to survive. Robert asserts that "Defendant Sosdian did not advise Plaintiff Robert Ianuale the reason for the arrest or that there had been a search warrant to search the home until after Plaintiff Robert Ianuale was arrested." (ECF No. 86 ¶ 54.) But aside from conclusory allegations, the FAC does not provide any factual details about the circumstances of Robert's arrest, and more importantly why Robert believes his arrest was made without probable cause. Thus, Robert's wrongful arrest claim fails because he does not plausibly allege that Detective Sosdian lacked probable cause to arrest him for the crimes he was charged with (endangering the welfare of a minor, promoting prostitution of a minor, use of a juvenile to commit a crime, distribution of child pornography, endangering the welfare of a child, luring an adult, and financial facilitation of a crime). *See Godfrey v. Pennsylvania*, 525 F. App'x

78, 80 (3d Cir. 2013) ("To the extent that [the plaintiff's] claims were for *false* arrest and imprisonment . . . he needed to point to facts suggesting that [the defendant] lacked probable cause to believe he had committed the offense for which he was arrested."); *Bradford v. Weaver*, Civ. No. 16-4510, 2016 WL 7007499, at *3 (D.N.J. Nov. 28, 2016) ("[The p]laintiff's conclusory claim that the defendants lacked probable cause to arrest him is insufficient.  [The p]laintiff must allege facts about the arrest, explaining how he came to the conclusion that he was arrested without probable cause.").

Accordingly, Robert's claim for wrongful arrest (Count One) will be dismissed without prejudice.

### F.    Unlawful Seizure of Property

Plaintiffs bring claims for the unlawful seizure of personal items by the MCPO Defendants. Plaintiffs allege that the seized property includes "computers, business and tax documents, thumb drives, and personal items."  (ECF No. 86 ¶ 236.)  According to Plaintiffs, a New Jersey state court judge ordered Defendants to return this property to Plaintiffs on October 18, 2019, but Defendants have not complied with that Order.  (*Id.* ¶ 234.)  The MCPO Defendants argue that Plaintiffs' property claims are barred by the doctrine of res judicata because the issue regarding Plaintiffs' property was "addressed" in state court.  (ECF No.  99-1 at 39.)  According to the MCPO Defendants, in response to Plaintiffs' criminal motion for return of property, the judge noted in his order that "the parties had agreed on the disposition" of the property items at issue.  (ECF No. 99-1 at 40.)  Plaintiffs argue in opposition that their "federal property deprivation claims under § 1983 could not have been adjudicated in the limited scope of a New Jersey criminal return-of-property hearing, which lacks full discovery, civil damages, and is not designed to address constitutional violations."  (ECF No. 100 at 12.)

Res judicata, or claim preclusion, "bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *McLaughlin v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 121 (3d Cir. 2017) (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). The party seeking to invoke the doctrine must establish that there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Id.*

At this stage, the Court is not persuaded by the MCPO Defendants' argument that Plaintiffs' property seizure claims are barred by res judicata. It is not clear that res judicata applies to the situation presented here, where the underlying action was a criminal case. *See Brown v. City of Trenton*, Civ. No. 04-5576, 2006 WL 1722586, at *5 (D.N.J. June 19, 2006) ("Res judicata cannot apply when, as here, the first action is criminal and the second action is civil."); *see also United States v. Bala*, 948 F.3d 948, 950 (8th Cir. 2020) (noting that the denial of a motion for return of property under the Federal Rules of Criminal Procedure "could not be given res judicata effect in a subsequent civil action seeking damages.") (citation modified). Indeed, the MCPO Defendants cite no case in which a court applied res judicata to bar a plaintiff's claim on the basis that the issue was decided in an underlying criminal proceeding.

Accordingly, the MCPO Defendants' Motion to Dismiss is denied as to Counts Four and Ten.

### G.    Claims Against Monmouth County

The Court previously dismissed Plaintiffs' § 1983 claims against Monmouth County, holding that Plaintiffs had not alleged "any specific actions on the part of the County that could give rise to liability beyond its conclusory allegation that the MCPO Defendants were 'working under the authority and direction of' the County." *Ianuale*, 2024 WL 4856206, at *16. Under New Jersey law, "the county prosecutor's law enforcement function is unsupervised by county

government or any other agency of local government, but remains at all times subject to the supervision and supersession power of the Attorney General." *Wright v. State*, 778 A.2d 443, 452 (N.J. 2001); *see also Johnson v. Passaic Cnty.*, Civ. No. 13-4363, 2014 WL 2203842, at *8 (D.N.J. May 23, 2014) ("[S]o long as a county prosecutor's alleged liability stems from the discharge of her sworn prosecutorial duties, she is deemed a state official and a County cannot be vicariously liable for her actions."). As a result, Plaintiffs' claims against Monmouth County in the initial Complaint, which "relate[d] solely to actions taken [by the MCPO] in its investigatory and prosecutorial capacity," failed as a matter of law. *Ianuale*, 2024 WL 4856206, at *16. Additionally, the Court found that Plaintiffs had "not set forth any specific policy or custom of the County" to succeed on under a *Monell* theory of liability. *Id.* at *17.

Monmouth County now argues that the FAC must be dismissed for the same reasons that the Court dismissed Plaintiffs' initial Complaint, including because the allegations in the FAC are directed towards law enforcement functions of the MCPO which the County "has no role whatsoever" in overseeing. (ECF No. 88-1 at 10.) In opposition, Plaintiffs submit that "Monmouth County maintained a policy and custom of executing improper warrants, using excessive force, and failing to adequately train officers." (ECF No. 91 at 6.) Along similar lines, Plaintiffs contend they have "provided factual allegations that show that there was a pattern of excessive force, falsified arrest reports, and unlawful search and seizure procedures, all of which establish a direct causal link between Monmouth County's policies and the injuries suffered by Plaintiffs." (*Id.*)

Upon the Court's review of the FAC, the Court concludes that Plaintiffs' claims against the County fail for the same reasons as previously outlined by the Court when it dismissed Plaintiffs' initial Complaint. As in the initial Complaint, the allegations against the County in the FAC are

directed towards law enforcement functions, which are overseen by the Attorney General of New Jersey and not the County. (*See, e.g.*, ECF No. 86 ¶ 154 ("Defendant[] County of Monmouth . . . [is] vested by state law with the authority to make policy on the use of force effectuating arrest and executing search warrants."); ¶ 155 ("Defendant[] County of Monmouth['s] . . . policy or custom to deliberately disregard properly executing a 'knock and announce' search warrant, and by purposely creating a 'ruse' to enter the home without announcing their intentions, is a custom or policy of Defendant[] and as such, violated the rights of Plaintiffs.").  Although Plaintiffs argue that the MCPO issuing press releases was an "administrative" function overseen by the County, (ECF No. 91 at 5), the Court previously rejected this argument.  *Ianuale*, 2024 WL 4856206, at *9.  Since the Court can discern no allegations in the FAC to support a claim against the County, and for the same reasons as outlined in the Court's prior opinion, Plaintiffs' claims against the County will be dismissed without prejudice.

### H.    Claims Against Hazlet Township

In Plaintiffs' initial Complaint, they brought claims against Hazlet Township and the Hazlet Township Police Department under a *Monell* theory of liability.  (*See generally* ECF No. 1.)  In dismissing Plaintiffs' claims, the Court held that Plaintiffs had failed to "set forth any factual averments about any policy or training undertaken by the Hazlet Defendants to support a *Monell* claim."  *Ianuale*, 2024 WL 4856206, at *17.[11]  Plaintiffs now allege that Hazlet Township (and other Defendants) was aware of incidents in which its officers "frequently, recklessly and/or negligently misrepresented the facts of arrest, falsified police and/or official records, made false

---

[11]    While the Court dismissed Plaintiffs' claims against Hazlet Township without prejudice, it dismissed Plaintiffs' claims against the Hazlet Township Police Department with prejudice because "local police departments are not subject to suit under § 1983."  *Ianuale*, 2024 WL 4856206, at *17 n.22.

arrests, mishandled and/or withheld evidence, improperly executed search warrants and used unreasonable excessive force on citizens/arrestees." (ECF No. 86 ¶ 158.) Plaintiffs rely on a 2021 Policy from the New Jersey Attorney General "outlining the proper execution of a knock and announce search warrant and proper procedures for applying for a no-knock warrant." (*Id.* ¶ 36.) According to Plaintiffs, this policy was issued in response to Defendants' "policy, custom or practice of violating rights and purposely disregarding 'knock and announce' search warrants." (*Id.*)

A municipality "can act only through people—its officers and employees." *Fernandes v. City of Jersey City*, Civ. No. 16-07789, 2017 WL 2799698, at *12 (D.N.J. June 27, 2017). As a result, "liability under [§] 1983 'may not be proven under the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)); *see Monell*, 436 U.S. 690-91; *Brinson v. City of Newark*, Civ. No. 20-9606, 2020 WL 6268696, at *4 (D.N.J. Oct. 26, 2020).

As the United States Court of Appeals for the Third Circuit has recognized, "a § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Est. of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). To show municipal liability, "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, . . . or that they were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice[.]'" *Id.* (quoting *Roman*, 940 F.3d at 798). Despite the existence of a "close relationship between policy-and-custom claims and failure-or-inadequacy claims," the Third Circuit has made clear that "the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an

unconstitutional policy or custom," while "a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Id.* at 106.

Hazlet Township asserts that the claims against it must be dismissed because Plaintiffs "fail to present any allegations or evidence to support their claim that Hazlet Township maintains an unlawful policy or a prior pattern of improper execution of knock and announce warrants." (ECF No. 90-4 at 13.) Plaintiffs respond by arguing that the FAC sufficiently alleges that "Defendant Township of Hazlet maintained a policy and practice of executing unlawful searches and arrests and that officers were not properly trained or supervised in constitutional search-and-seizure procedures." (ECF No. 93 at 7.)

Based on the Court's review, the FAC does not include sufficient factual allegations to assert a failure to train claim based on deliberate indifference. Deliberate indifference claims are emblematic of a failure to train, supervise, and discipline claim. *See Brinson*, 2020 WL 6268696, at *4. A plaintiff can sufficiently plead deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011). Importantly, deliberate indifference is a "stringent standard of fault." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014); *see Bernal v. Borough of Bogota*, Civ. No. 22-05044, 2023 WL 5950398, at *5 (D.N.J. Sept. 13, 2023) ("A 'plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" (quoting *Brown*, 520 U.S. at 404)).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Brown*, 520 U.S. at 409); *Brinson*, 2020 WL 6268696, at *4 (noting that to "satisfy the *Monell* requirement of actual municipal involvement or culpability, it requires 'deliberate indifference' to constitutional rights and a degree of foreknowledge, generally if not always based on a pattern of past incidents, that a constitutionally perilous situation will occur"). However, "in certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (citation modified); *see City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) (noting that city policymakers "know to a moral certainty that their police officers will be required to arrest fleeing felons," and therefore "the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights") (citation modified). These special situations are referred to as "single-incident," and depend "on '[t]he likelihood that the situation will recur and the predictability that an [official] lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223-24 (quoting *Brown*, 520 U.S. at 409). The single-incident theory has a "narrow" reach. *Id.* at 224.

Even accepting the allegations in the FAC as true and drawing all inferences in favor of Plaintiffs, the Court finds that the allegations in the FAC are too conclusory to meet the "stringent standard of fault" associated with a claim for failure to train. *Thomas*, 749 F.3d at 223. The FAC does not contain any factual allegations indicating a pattern of allegedly similar constitutional violations, which is "'ordinarily necessary' to demonstrate deliberate indifference for purposes of

failure to train." *Connick*, 563 U.S. at 62 (quoting *Brown*, 520 U.S. at 409); *Glaesener v. City of Jersey City*, Civ. No. 19-18089, 2021 WL 4206297, at *7-8 (D.N.J. Sept. 15, 2021) (dismissing the plaintiff's *Monell* claims against Jersey City because the plaintiff could not allege "a pattern of allegedly similar constitutional violations").

Nor does the Court find that Plaintiff has alleged facts to permit it to infer that "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (collecting single-incident cases that show the narrow scope of these claims); *Nash v. Mitchell*, Civ. No. 23-3679, 2023 WL 8037273, at *3 (E.D. Pa. Nov. 17, 2023) (rejecting *Monell* claim predicated on failure to knock-and-announce, reasoning that the plaintiff only pled "facts specific to his injury and arrest, as opposed to widespread or well-known police department practices."); *Gaymon v. Esposito*, Civ. No. 11-4170, 2013 WL 4446973, at *15 (D.N.J. Aug. 16, 2013) (dismissing *Monell* claim because the plaintiffs "fail[ed] to state facts supporting their deliberate indifference based either on a pattern of constitutional violations of which they had notice or on a 'single-incident' liability theory").

Likewise, the FAC includes only conclusory allegations to support Plaintiffs' *Monell* claims against Hazlet Township based on an unlawful custom or policy. (*See, e.g.*, ECF No. 86 ¶ 120 ("Hazlet Township [is] liable for the improper training of its police officers who entered Plaintiffs' property, because they failed to provide adequate training regarding the constitutional requirements for executing search warrants and respecting the Fourth Amendment rights of individuals.").) Indeed, "a successful *Monell* claim must contain specific factual allegations and mere '[c]onclusory recitations of the elements of a *Monell* claim are insufficient.'" *Bernal v. Borough of Bogota*, Civ. No. 22-05044, 2023 WL 1883353, at *7 (D.N.J. Feb. 9, 2023) (quoting

34

*Rollins v. City of Newark*, Civ. No. 18-14473, 2020 WL 1528035 (D.N.J. March 31, 2020)); *see also Gattas v. City of Jersey City*, Civ. No. 07-4242, 2009 WL 5216973, at \*11 (D.N.J. Dec. 29, 2009) ("Plaintiffs fail to allege either a municipal policy or custom that would satisfy the *Monell* requirements.  They allege no statement, ordinance, regulation, or official decision adopted and promulgated by Jersey City regarding the authorization of certain officers to use force excessively and cover up the excessive use of force.").

Although Plaintiffs point to a December 7, 2021 New Jersey Attorney General Directive regulating "no-knock" warrants, it is undisputed that a so-called "no-knock" warrant was not at issue here.  Rather, Plaintiffs allege that Defendants failed to comply with the knock-and-announce requirement of a standard warrant.  (*See* ECF No. 86 ¶ 34.)  Plaintiffs merely assert in conclusory fashion that this Attorney General Directive was issued in response to Defendants' "policy, custom or practice of violating rights and purposely disregarding 'knock and announce' search warrants." (*Id.* ¶ 140.)  Based on the FAC and attached exhibits, the Directive was issued to "regulate[] the already-rare application of no-knock warrants in New Jersey." (ECF No. 86-2 at 2-3.[12])  The Court does not find that reference to this Directive alone establishes a pattern of similar violations on the part of Defendants to assert a failure to train claim in this case.

Accordingly, all claims against Hazlet Township will be dismissed without prejudice.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, and other good cause shown, Defendant Monmouth County's Motion (ECF No. 88) is **GRANTED**.  All claims against Monmouth County are dismissed without prejudice.  The Hazlet Defendants' Motion (ECF No. 90) is **GRANTED in part** and **DENIED in**

---

[12]    The December 7, 2021 New Jersey Attorney General Directive is attached an exhibit to the FAC.

**part**.  Plaintiff Philip's claims for wrongful arrest (Count Two) and excessive force (Count Three) may proceed against Officer Marvel.  All other claims against the Hazlet Defendants are dismissed without prejudice.  The MCPO Defendants' Motion (ECF No. 99) is **GRANTED in part** and **DENIED in part**.  Plaintiff Philip's claims for wrongful arrest (Count Two) and excessive force (Count Three) may proceed against MCPO Detectives John Sosdian and Richard Bruccoliere in their individual capacities.  Plaintiffs' claims for unlawful seizure (Counts Four and Ten) may proceed to the extent they are asserted against the MCPO Defendants in their individual capacity, but all other claims are dismissed without prejudice.  An appropriate Order follows.

Dated: July 29, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE