UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT J. IANUALE AND PHILIP J. IANUALE,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF NEW JERSEY, *et al.*,<br><br>Defendants. | Civ. No. 18-3069 (GC)(JBD)<br><br>**MEMORANDUM ORDER** |

This matter is before the Court by way of the parties' discovery dispute letter dated October 9, 2026 regarding an investigative file (the "MCPO file") that contains materials presently subject to an expungement order entered by the Superior Court of New Jersey, Monmouth County, Expungement Docket No. XP-MON-24-000317. [Dkt. 135.] Many of plaintiffs' discovery requests to defendants Monmouth County Prosecutor's Office ("MCPO"), Christopher J. Gramiccioni, Margaret Koping, John Sosdian, and Richard Bruccoliere (collectively the "Monmouth County Defendants") and defendant William Marvel implicate materials contained in the MCPO file. Defendants have not fully responded to these requests in light of the expungement order. Plaintiffs have repeatedly criticized defendants for their incomplete discovery responses, resulting in the dispute now before the Court.

As discussed during the telephone status conference on October 22, 2026, the Court concludes that because plaintiffs seek the discovery implicating materials

subject to the expungement order, they must seek appropriate relief from the Superior Court in the first instance in accordance with N.J.S.A. 2C:52-19.

*

The parties first raised this dispute with the Court in August 2026. [Dkts. 125, 127.] The Court held a telephone status conference with the parties on August 26, 2026 to address, among other things, "the expungement order's effect on the parties' ability to review materials in the MPCO file and to produce relevant materials therein in discovery in this case." [Dkt. 128] at 1-2. During the conference, the Court discussed the relevance of the MCPO file to the claims at issue in this action, and explained that if the parties sought records subject to the expungement order, they would need to make an application in New Jersey Superior Court pursuant to N.J.S.A. 2C:52-19. That statute provides in relevant part: The "[i]nspection . . . or release of [expunged files or] the information contained therein . . . may be permitted by the Superior Court upon motion for good cause shown and compelling need based on specific facts." N.J.S.A. 2C:52-19.

To facilitate any application to the Superior Court, this Court issued an order finding, given the nature of the claims at issue in this case, "that there is good cause and a compelling need [for purposes of N.J.S.A. 2C:52-19] for the inspection and release of the documents and records contained in the criminal file subject to the expungement order in Expungement Docket No. XP-MON-24[-]000317 for use in this action by the Monmouth County Defendants, defendant William Marvel, and plaintiffs." [Dkt. 128] at 2. The Court separately directed the parties to meet and

confer regarding "the appropriate process for obtaining the files subject to the Expungement Order" in light of its findings. [Dkt. 129] at 1. The parties could not reach agreement on an appropriate path forward, and the MCPO now requests that this Court directly order the release of the expunged records for purposes of this litigation. [Dkt. 135] at 3-5. If this Court cannot grant such relief and the parties must instead make an application in the Superior Court, the parties also disagree as to who should make the application. *Id.*; *see also* [Dkt. 125] at 3-4.

On October 22, 2026, the Court held a telephone status conference on the record to address, among other things, this dispute. [Dkt. 137.] During that conference, the Court denied the MCPO's request that this Court order the release of materials subject to the expungement order, and directed plaintiffs to file an appropriate application for records in the Superior Court. The Court indicated that it would issue a written order memorializing its directives in due course. This is that order.

*

Expungement is a remedy designed "to provide the means of insulating one acquitted of a charge of criminal conduct from the disabilities or adverse effects which could be foreseen as resulting from dissemination of the fact of his mere involvement with law enforcement." *Ulinsky v. Avignone*, 372 A.2d 620, 622 (App. Div. 1977). "In contrast to sealed documents, which are readily available upon motion and for good cause, expungement creates a legal fiction under which the records are effectively non-existent." *Troso v. City of Atl. City*, Civ. No. 10-1566

(JS), 2012 WL 12897880, at *1 (D.N.J. Jan. 23, 2012) (citation omitted). Indeed, "[a]s a general rule, when a court orders expungement of criminal records, those records must be 'removed from the files of any government agency that is given notice of the expungement petition' and 'isolated and placed in the control of a designated person within that agency.'" *New Jersey Div. of Child Prot. & Permanency v. A.P.*, 318 A.3d 632, 634 (N.J. 2024) (quoting *G.D. v. Kenny*, 15 A.3d 300, 311 (N.J. 2011)) (further citations omitted).

However, courts have held that "[t]he shield of expungement cannot be converted into a sword upon which to impale," *Ulinsky*, 372 A.2d at 624, and so there are "a number of exceptions to th[e] general rule." *G.D.*, 15 A.3d at 311. Relevant here, one such exception is set forth in N.J.S.A. 2C:52-19, which provides as follows:

> Inspection of the files and records, or release of the information contained therein, which are the subject of an order of expungement, or sealing under prior law, may be permitted by the Superior Court upon motion for good cause shown and compelling need based on specific facts. The motion or any order granted pursuant thereto shall specify the person or persons to whom the records and information are to be shown and the purpose for which they are to be utilized. Leave to inspect shall be granted by the court only in those instances where the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings. Such records may not be inspected or utilized in any subsequent civil or criminal proceeding for the purposes of impeachment or otherwise but may be used for purposes of sentencing on a subsequent offense after guilt has been established.

N.J.S.A. 2C:52-19.

*

As noted, the parties raised two issues for resolution: (1) whether this Court or the Superior Court should direct the MCPO to disclose the records subject to the

expungement order; and (2) if the application must be made in Superior Court, which party or parties are responsible for making that application. The Court addresses each issue in turn.

First, the Court determines that an application must be made in the first instance in the Superior Court for the release or inspection of the records contained in the MCPO file. On this issue, *Troso v. City of Atlantic City* is directly on point. As the Court explained in that case, "[w]here state court proceedings are subject to secrecy, comity requires the party seeking disclosure to first exhaust the procedures required by state statute." 2012 WL 12897880, at *2. The Court in *Troso* accordingly concluded that the party requesting access to the expunged records "must [ ] first move before the State Superior Court for the[ir] release." *Id.* The Court agrees with and adopts the Court's reasoning in *Troso* in full. Any application for the release of the records subject to the expungement order must first be made in the Superior Court.[1]

Second, as the party seeking disclosure of the records, the Court concludes that plaintiffs are the appropriate party to make any application to the Superior Court. As noted in the Court's order dated August 28, 2026, the MCPO file "relat[es] to a criminal investigation directly at issue in this civil action, in which plaintiffs bring causes of action under 42 U.S.C. § 1983 for constitutional violations based on plaintiffs' allegations that Philip Ianuale was wrongfully arrested, that

---

[1] The Court may revisit the MCPO's request that this Court order the release of materials subject to the expungement order, if necessary, in the event that the Superior Court denies the application.

certain defendants used excessive force in arresting him, and that the Monmouth County Defendants unlawfully seized (and retained) plaintiffs' personal property." [Dkt. 128] at 1. Through this action, plaintiffs have affirmatively put the expunged records at issue, and they now seek discovery that implicates those records. While defendants are obligated to respond to plaintiffs' discovery requests under the Federal Rules of Civil Procedure, they cannot simply disregard the expungement order, which specifically prohibits them from disclosing materials subject to the order. Notably, defendants have not submitted that the records are necessary for their defense; to the contrary, the records are needed to respond completely to *plaintiffs'* requests for discovery. As the parties seeking the information, plaintiffs are best suited to establish why the materials subject to the expungement order are necessary to advance their claims, and therefore they should undertake the process for obtaining the files. *See A.P.,* 318 A.3d at 640 (holding that "the party seeking to use expunged records" must make the required showing of "good cause" and "compelling need based on specific facts" for purposes of disclosure under N.J.S.A. 2C:52-19); *Troso*, 2012 WL 12897880, at *1-2 (same; ordering defendants to make application because they sought access to expunged record they asserted was "vital" to their defenses).[2]

---

[2] The Monmouth County Defendants represented during the October 22, 2026 telephone status conference that they would not oppose an application to permit inspection of any records subject to the expungement order, but reserved the right to review any released records for responsiveness and object to the use of those records based on proportionality considerations pursuant to Federal Rule of Civil Procedure 26(b). In light of this representation, the Court encourages the parties to work together in good faith through the application process, including by continuing

*

For the reasons stated, and for other good cause shown,

**IT IS** on this 28th day of October, 2026,

**ORDERED** that the MCPO's request that this Court order the release of the expunged records is DENIED without prejudice; and it is further

**ORDERED** that plaintiffs shall file any application for materials subject to the expungement order with the Superior Court of New Jersey, Monmouth County; and it is further

**ORDERED** that on or before **November 30, 2026**, plaintiffs shall file via CM/ECF a letter apprising the Court of the status of their application.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

---

to explore the possibility of submitting a joint or consent motion to the Superior Court.